THE LACLEDE FIREBRICK MANUFACTURING COMPANY V. $\overline{\begin{smallmatrix}14 & 37\\ 5a & 317\end{smallmatrix}}$
JOSEPH WILLIAMS ET AL.

ATTORNEY IN FACT — PERSONAL LIABILITY ON CONTRACT WITH STRAN-
GERS.— A power of attorney authorized H. to receive funds becom-
ing due W. from time to time under W.'s contract with Denver to
build a sewer; it also authorized H. to disburse the same for labor
done and materials furnished under the sewer contract, precisely
as W. himself might do. W. made a written contract with L. for
sewer pipe, by the terms of which L. was to receive a certain pro-
portion of the price from time to time as the money was paid H. by
the city; L. was also to have precedence in payment of the balance
due for sewer pipe furnished from a certain percentage of W.'s
compensation retained by the city until completion of the sewer.
H. indorsed upon the contract for pipe his written acceptance
thereof, stipulating, however, that such acceptance should be con-
strued according to the terms of his power of attorney from W.
*Held*, that H. was liable for a failure to carry out the terms of the
sewer-pipe contract, allowing precedence in payment of the bal-
ance due thereon from the percentage reserved and paid him upon
final acceptance of the sewer.

*Error to District Court of Arapahoe County.*

IN the year 1882 defendant in error, Joseph Williams,
contracted with the city of Denver to construct what is
known as the Twentieth-street district sewer. By the
terms of this contract, at stated intervals as the work
progressed, the city engineer was to make estimates of
the value of the work done thereunder; eighty per cent.
of the amount represented by each of these estimates
was to be at once paid by the city; the remaining twenty
per cent. was to be withheld as a guaranty until the final
completion and acceptance of the sewer.

Williams was required to give bond, and for the purpose
of securing his bondsmen he executed to John W. Hor-
ner, who was one of said bondsmen, an irrevocable power
of attorney, in words and figures as follows:

" Know all men by these presents that I, Joseph Will-
iams, of the city of Denver, in the county of Arapahoe,
and state of Colorado, do hereby make, constitute and

appoint John W. Horner, of the city of Denver, in the county of Arapahoe, in the state of Colorado, my true, sufficient and lawful attorney, irrevocable, for me and in my name to receive, receipt for and take from the city of Denver all warrants or other evidences of indebtedness that may become due me for work done or to be done, materials furnished or to be furnished, or otherwise that may become due me under my contract with the city of Denver for the construction of the Twentieth-street district sewer, in the city of Denver aforesaid, and to see to or negotiate and sell said evidences of indebtedness or warrants for the best price that can be obtained therefor at the time, and apply the proceeds thereof or see that the proceeds thereof are applied to the payment for the materials used in the said district sewer, and the labor that may be employed in the performance of the work necessary to construct said sewer.

"The intention of this instrument being the protection of the parties interested in the construction of said district sewer, including the bondsmen of the party of the first part, the city of Denver, and the parties furnishing materials and labor for the construction of said district sewer.

"Hereby giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as I myself might or could do, if personally present, with full power of substitution and revocation, hereby ratifying and confirming all that my said attorney or his substitute shall lawfully do or cause to be done by virtue hereof.

"In witness whereof I have hereunto set my hand and seal, this 27th day of April, A. D. 1882.

    [Signed]    "JOSEPH WILLIAMS. [SEAL.]"

Williams entered into a written contract with plaintiff in error to furnish sewer pipe for use in the construc-

tion of said sewer. This contract contained the following, among other provisions:

"Said herein-named material shall be in accordance with the requirements of said second party's contract with the said city of Denver as per specifications relating thereto furnished to first party hereto; and the second party agrees to and with the first party to receive the material herein mentioned, and shipped according to the terms of the contract, on board cars at the works of first party, in accordance with the terms of bills of lading, taken by the first party, in the usual manner and form, and to pay for the same as follows: Eighty per cent. of the amount of material furnished under this contract, included in city engineer's monthly or other estimate, shall be paid to John W. Horner, of Denver, *acting as trustee*, by agreement of the parties hereto, within thirty days after the delivery of the warrant for any such estimate, who shall, without delay, pay over any such amount to first party, either by sight draft payable to first party's order in St. Louis, or by a legal warrant of said city of Denver, at par value, properly issued and presented to the city treasurer, so that any such warrant will bear ten per cent. interest per annum from the date thereof until paid.

"And it is further understood and agreed by and between the several parties hereto, and by John W. Horner, *acting as trustee for the parties hereto*, that in consideration of first party's agreement to receive eighty per cent. of value in part payment of the material furnished under this contract, as the same may be estimated upon at any time by the city engineer of the said city of Denver, that said first party shall have a special lien upon the twenty per cent. retained by the said city of Denver out of all estimates under the contract of said second party with the said city of Denver, for the construction of the said Twentieth-street district sewer, for the purpose of securing said first party in the full payment of

any claim that may be due to said first party by said second party under the provision of this contract; and inasmuch as said John W. Horner holds a power of attorney from said second party, authorizing him to collect all moneys or other things that may be due said second party under said contract with said city of Denver, as therein fully set out:

"It is agreed between the respective parties hereto (said John W. Horner assenting) that said John W. Horner shall, *out of said twenty per cent. as and when the same shall come into his hands under said power of attorney, pay to said first party in full any amount in any manner accruing to first party* from said second party, under this contract, it being the intention of this contract that said twenty per cent. of all estimates retained by said city of Denver, under second party's contract therewith, or as much thereof as may be necessary therefor, shall, upon receipt thereof by said John W. Horner, under said power of attorney, be held and deemed to be for the use and benefit of said first party, for the purpose of paying in full all claims of said first party against said second party that may arise in any manner under this contract.

"It is further agreed between the parties hereto that for any amounts unpaid out of the monthly or other estimates of the city engineer of the city of Denver, for material shipped in accordance with the provisions of this contract, and included in said estimates, that said first party shall be entitled to interest upon any such amounts or part thereof, remaining unpaid after thirty days from date of estimate, at the rate of ten per cent. per annum until paid in accordance with this contract."

Upon said contract appears the following indorsement by Horner:

"I hereby accept the aforementioned trust, created by the parties in the foregoing contract, according to the true tenor and effect of said contract, and will perform

the same according to the true tenor and effect thereof, construed with the power of attorney given me by Joseph Williams, party of the second part, to collect and disburse the proceeds arising from this contract with the city of Denver, referred to in said contract.

"JOHN W. HORNER.

"*Denver, Colorado, June, 1882.*"

Williams in due time completed the work to the satisfaction and acceptance of the city. All moneys due him in pursuance of his contract with the city, including the reserved twenty per cent., were paid to Horner, who claims to have disbursed the same in accordance with the power of attorney.

Plaintiff in error furnished most of the sewer pipe used; it received from Horner eighty per cent. of the contract price therefor, as the same was from time to time paid by the city according to the estimates of the city engineer. But there remained a balance of $1,897.32 due plaintiff in error from Williams under the contract.

To recover the foregoing balance, the present action was brought against Williams and Horner. The cause was tried to the court without a jury, and judgment was duly entered against Williams for the amount mentioned, together with the accrued interest. But the court found in favor of defendant Horner and entered judgment dismissing the complaint as to him. To this judgment exceptions were duly taken, and the questions thereby raised are adjudicated in the following decision.

Mr. T. D. W. YONLEY, for plaintiff in error.

Messrs. L. P. MARSH and J. W. HORNER, for defendants in error.

CHIEF JUSTICE HELM delivered the opinion of the court.

Upon the facts in the present case there is no substantial conflict of testimony. It does not appear that

Horner has remaining in his hands any money or evidences of indebtedness paid by the city in connection with the Twentieth-street district sewer; nor is any intentional fraud on his part shown in the disbursement of this fund.   Therefore, the question of his liability in the present case must be answered by construction of the written instruments under which he acted.

The contract between Williams and the Laclede Company clearly provided: That the company was to receive from Horner eighty per cent. of the price agreed upon for sewer pipe delivered and used whenever, from time to time during the prosecution of the improvement, the city paid Horner, upon estimates of the city engineer, eighty per cent. of the amounts due Williams from the city; that the company should have a lien for the balance of its claim upon the remaining twenty per cent. retained by the city under its contract with Williams until the completion of the sewer; and that out of this twenty per cent. the company should be paid by Horner its balance in full as soon as the latter fund came into his hands.

Horner indorsed upon the contract his written acceptance thereof; he thereby became a trustee for the company, and obligated himself to comply with the foregoing terms and conditions, unless such compliance was in some way qualified or limited.   In his written indorsement accepting the trust Horner declared that he would perform the contract "according to the true tenor and effect thereof, *construed with the power of attorney given* [*him*] *by Joseph Williams.* * * *"   We shall assume, without discussion, that this language operated to render Horner's compliance with the agreement subject to any limitation of his authority contained in the power of attorney through which he became Williams' financial agent in the premises.   It therefore becomes necessary to briefly notice the latter instrument.

The power of attorney authorized Horner to receive the

warrants and other evidences of indebtedness coming to Williams under the latter's contract with the city, to exchange the same for money on the best terms possible, and with the proceeds to liquidate the claims against Williams for work performed and materials furnished in constructing the Twentieth-street district sewer. By the very terms of the instrument, Horner, in receiving and disbursing the money in question, was placed as nearly as possible in the position occupied by Williams, and vested with the precise power and authority that Williams himself would have exercised had no one been selected to act in his stead. He was not required to distribute the funds *pro rata* among the workmen and material-men; nor were preferences among creditors forbidden. If the money coming into Horner's hands by virtue of Williams' contract with the city should prove insufficient to pay all the claims in connection therewith, he might discriminate in favor of one claimant and against another; he could pay all that was due the workmen and leave the material-men partially unpaid; or he might pay the entire claim of one material-man and a portion of the claim of another. Whatever Williams could legally have done in this regard Horner was empowered to do. That this was Horner's belief at the time is evidenced by the fact that he paid a part of the creditors, viz., the workmen, in full, leaving others, including the Laclede Company, partially unsatisfied.

We discover in the power of attorney no inconsistency with Williams' agreement as to the mode of paying and securing the purchase price of the Laclede Company's sewer pipe. And upon Horner's acceptance of the trust he became a party to this portion of the contract for pipe, and bound himself to comply with its terms. If he did not intend to do so, he should have declined acceptance; for, under the circumstances, it is fair to presume that his conduct induced the company to make the agreement with Williams and to part with its property.

No brief has been filed by defendant in error, and we are not advised of the theory upon which the court below proceeded; but, according to our view, under the pleadings and evidence as presented by the present record, Horner, as well as Williams, should have been held liable.

The judgment is accordingly reversed and the cause remanded for a new trial.

*Reversed.*

MR. JUSTICE ELLIOTT, having presided at the trial below, did not participate in this decision.