WILLIAMS ET AL. v. THE LACLEDE FIRE BRICK MANUFACTURING COMPANY.

CONTRACTS—TRUSTEE'S LIABILITY.

A contractor, for the building of a city sewer, agreed to buy certain material from a manufacturer, payments to be made by an attorney in fact who was designated as trustee, and who held an irrevocable power from the contractor to collect and receive from the city all warrants or other evidences of indebtedness for work done or materials furnished, or to be done or furnished under the contract, and apply the proceeds to the payment of materials used in said sewer and the labor employed in constructing the same. The trust was accepted by the trustee, who agreed to execute it in accordance with the contract creating it, construed with the power of attorney from the contractor. *Held,* that a joint judgment against the contractor and trustee must be confined to the amount, if any, for which the latter is in default; and, further, that the trustee was not liable for material not used, although ordered by the contractor.

*Appeal from the District Court of Arapahoe County.*

Mr. LUCIUS P. MARSH, for appellants.

Messrs. LIPSCOMB & HODGES, for appellee.

THOMSON, J., delivered the opinion of the court.

In the month of June, 1882, Williams, having a contract with the city of Denver for the construction of the Twentieth street district sewer, contracted with The Laclede Fire Brick Company for certain material to be used in the building of the sewer. This material, to be delivered by the company to Williams, was described in the contract between them as follows:

"2700 lineal feet 21-in. sewer pipe, more or less; 3430 lineal feet 18-in. sewer pipe, more or less; 9340 lineal feet 15-in. sewer pipe, more or less; 10824 lineal feet 12-in. sewer pipe, more or less; 33400 lineal feet 9-in. sewer pipe, more or less; 7000 lineal feet 6-in. sewer pipe, more or less; 30 pieces 6-in. ✕ 21-in. Y junctions, more or less; 35 pieces 6-in. ✕ 18-in. Y junctions, more or less; 300 pieces 6-in. ✕ 15-in. Y junctions, more or less; 88 pieces 6-in. ✕ 12-in. Y junctions, more or less; 3300 pieces 6-in. ✕ 9-in. Y junctions, more or less."

The price of the material was the list price, discounted at the rate of seventy per cent. The contract also contained the following stipulations:

"Said herein named material shall be in accordance with the requirements of said second party's contract with the said city of Denver, as per specifications relating thereto furnished first party herewith, and the second party agrees to and with the first party to receive the material herein mentioned and shipped according to the terms of the contract on board cars at the works of first party in accordance with the terms of bills of lading taken by the first party in the usual manner and form, and to pay for same as follows: Eighty (80) per cent of the amount of material furnished under this contract included in city engineer's monthly or other estimate, shall be paid to John W. Horner of Denver, acting as trustee by agreement of the parties hereto, within thirty (30) days after the delivery of the warrant for any such estimate, who shall without delay pay over any such amount to first party, either

by sight draft payable to first party's order in St. Louis, or by a legal warrant of said city of Denver at par value, properly issued and presented to the city treasurer and endorsed by said treasurer, so that any such warrant will bear ten (10) per cent interest per annum from date thereof until paid.

"And it is further understood and agreed by and between the several parties hereto and by John W. Horner, acting as trustee for the parties hereto, that in consideration of first party's agreement to receive the eighty (80) per cent of value in part payment for the material furnished under this contract, as the same may be estimated upon at any time by the city engineer of said city of Denver, that said first party shall have a special lien upon the twenty (20) per cent retained by the said city of Denver out of all estimates under the contract of said second party with the said city of Denver for the construction of the said Twentieth street district sewer, for the purpose of securing said first party in the full payment of any claim that may be due to said first party by said second party under any provision of this contract, and inasmuch as said John W. Horner now holds a power of attorney from said second party authorizing him to collect all moneys or other things that may be due said second party under said contract with said city of Denver as therein fully set out.

"It is agreed between the respective parties hereto (said John W. Horner assenting) that John W. Horner shall, out of said twenty (20) per cent as and when the same shall come into his hands under his power of attorney, pay to said first party in full, any amount in any manner accruing to first party from second party under this contract, it being the intention of this contract that said twenty (20) per cent of all estimates retained by said city of Denver under second party's contract therewith, or as much thereof as may be necessary therefor, shall upon receipt thereof by said John W. Horner under said power of attorney, be held and deemed to be for the use and benefit of said first party for the purpose of paying in full all claims of said first party against

said second party that may arise in any manner under this contract."

On the day of its execution, Horner indorsed upon the contract his acceptance of the trust, as follows:

" I hereby accept the aforementioned trust created by the parties in the foregoing contract according to the true tenor and effect of said contract, and will perform the same according to the true tenor and effect thereof construed with the power of attorney given me by Joseph Williams, party of the second part, to collect and disburse the proceeds arising from his contract with the city of Denver referred to in said contract.                                    JOHN W. HORNER.

" Denver, Colorado, June — 1882."

The following is the power of attorney referred to:

" Know all men by these presents, that I, Joseph Williams, of the city of Denver in the county of Arapahoe and state of Colorado, do hereby make, constitute, and appoint John W. Horner, of the city of Denver in the county of Arapahoe, in the state of Colorado, my true, sufficient and lawful attorney, irrevocable, for me and in my name, to receive, receipt for and take from the city of Denver, all warrants or other evidences of indebtedness that may become due me for work done or to be done, materials furnished or to be furnished, or otherwise that may become due me under my contract with the city of Denver, for the construction of the Twentieth street district sewer in the city of Denver aforesaid, and to see to or negotiate and sell said evidences of indebtedness or warrants for the best price that can be obtained therefor at the time and apply the proceeds thereof or see that the proceeds thereof are applied to the payment for the materials used in the said district sewer or that may be used in said district sewer and the labor that may be employed in the performance of the work necessary to construct the said sewer.

" The intention of this instrument being the protection of the parties interested in the construction of said district

sewer, including the bondsmen of the party of the first part, the city of Denver and the parties furnishing materials and labor for the construction of said district sewer.

" Hereby giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as I myself might or could do if personally present, with full power of substitution and revocation hereby ratifying and confirming all that my said attorney or his substitute shall lawfully do or cause to be done by virtue hereof.

" In witness whereof, I have hereunto set my hand and seal this 27th day of April, A. D. 1882.

" JOSEPH WILLIAMS.    [SEAL]."

The complaint alleged the delivery to Williams of sewer material of the value of $12,425.61, of which there had been paid the sum of $9,766.03, leaving an unpaid balance of $2,659.58, to recover which this action was brought.

The defendant Horner answered, averring the payment by him to the plaintiff in full for all material furnished by it under its contract, which was used in the construction of the sewer.    Williams also answered payment.

Upon the evidence given at the trial the court made the following findings :

" 1. The plaintiff delivered on board the cars at St. Louis and shipped to the defendant, Williams, the following sewer material, charging him therefor in this action the total sum of $11,663.25, and crediting him with payments thereon amounting to $9,766.03 :

" 2262 feet of 21-inch sewer pipe ; 2904 feet of 18-inch sewer pipe ; 2764 feet of 15-inch sewer pipe ; 6222 feet of 12-inch sewer pipe ; 22508 feet of 9-inch sewer pipe ; 7150 feet of 6-inch sewer pipe ; 36 feet of 21-inch gutter pipe ; 30 pieces of 6×21-inch Y junctions ; 96 pieces of 6×18-inch Y junctions ; 139 pieces of 6×15-inch Y junctions ; 530 pieces of 6×12-inch Y junctions ; 1570 pieces of 6x9-inch Y junc-

tions; 25 pieces of 9×15-inch Y junctions; 24 pieces of 21×
12-inch D Y junctions; 47 pieces of 18-inch curves; 31 pieces
of 15-inch curves; 333 pieces of 9-inch curves; 52 pieces of
9-inch curves, 35 radius.

"2. The sewer pipe and Y junctions of all kinds and de-
scriptions actually used in the sewer as shown by the final
estimate of the city engineer was the following:

"2806 feet of 21-inch sewer pipe; 2958 feet of 18-inch
sewer pipe; 2570 feet of 15-inch sewer pipe; 7320 feet of
12-inch sewer pipe; 26166 feet of 9-inch sewer pipe; 33
pieces of 21×6-inch Y junctions; 57 pieces of 18×6-inch Y
junctions; 50 pieces of 15×6-inch Y junctions; 459 pieces of
12x6-inch Y junctions; 657 pieces of 9×6-inch Y junctions;
9 pieces of 6×6-inch Y junctions.

"3. The following sewer materials shipped by the plaintiff
to the defendant was not used in the sewer nor estimated for
by the city engineer, and none thereof except the 7150 feet
of 6-inch pipe was provided for in the plaintiff's contract
with Williams:

"7150 feet of 6-inch sewer pipe; 36 feet of 21-inch gutter
pipe; 24 pieces of 21×12-inch D Y junctions; 47 pieces of
18-inch curves; 31 pieces of 15-inch curves; 333 pieces of
9-inch curves; 52 pieces of 9-inch curves, 35 radius.

"It is charged up in the plaintiff's bill at $1,039.33.

"4. In constructing the sewer there was placed therein the
following sewer material purchased from the Cambria Com-
pany and not furnished by the plaintiff:

"239 feet of 21-inch sewer pipe; 1006 feet of 18-inch
sewer pipe; 140 feet of 15-inch sewer pipe; 1034 feet of 12-
inch sewer pipe; 294 feet of 9-inch sewer pipe; 14 pieces of
6×18-inch Y junctions; 275 pieces of 6×9-inch Y junctions.

"The value of this material calculated upon the basis of
the plaintiff's contract with Williams was $1,103.05.

"5. The plaintiff is entitled to recover from the defend-
ants the sum of $1,039.97 and the interest thereon at the rate
of eight per cent per annum. The amount of the recovery is
ascertained by calculating the contract price of all the sewer

material delivered by the plaintiff on board the cars at St. Louis and shipped to the defendant, Williams, which is described in plaintiff's contract with Williams, and deducting therefrom the total amount admitted by plaintiff to have been paid upon the entire bill. Nothing is allowed plaintiff for sewer material delivered by plaintiff on board cars at St. Louis and shipped to defendant, Williams, which is not described in the contract between plaintiff and Williams, and Williams is not allowed to reduce plaintiff's claim in this action by reason of the fact that he placed in the sewer pipe which he purchased of the Cambria Company."

The plaintiff had judgment for $1,781.16, from which the defendants appealed.

The findings are accepted by both sides as correct in so far as the facts are concerned, but it is contended by appellants that the court erred in its application of the law to these facts.

It was held by the supreme court, when this cause was before it, that, under the pleadings and evidence, whatever liability might have been incurred in favor of the plaintiff, attached to both defendants. *Laclede F. B. M. Co. v. Williams*, 14 Colo. 37. Accordingly, the judgment from which this appeal is prosecuted was rendered against the defendants jointly.

Horner was not interested in the sewer contract with the city, and is a party to the contract between the plaintiff and Williams only by virtue of his written acceptance of the trust which it created; and, whatever might be the amount for which Williams became liable upon his contract with the plaintiff, this judgment being against Horner jointly with Williams, must be confined to the amount, if any, for which Horner is in default. The obligations which the latter assumed are defined and limited by this contract of acceptance, and he can be held only to the performance of the acts which he expressly agreed to perform. His agreement was to execute the trust in accordance with the tenor and effect of the contract creating it, construed with the power of attorney

from Williams.   The effect of the qualifying clause is to limit
his obligations to the plaintiff to the performance of the acts
which he was authorized to perform by the terms of that
instrument; and, to ascertain what he was bound by his
agreement to do, we must look to the power of attorney.
The authority which it conferred upon him was, in the name
of Williams, to receive from the city of Denver all warrants
or evidences of indebtedness coming to Williams for work
and materials for the construction of the sewer, to sell these
warrants and apply their proceeds in payment for the mate-
rials which might be used in the sewer, and the labor that
might be employed in the performance of the work.   To
authorize any payment by him for either material or labor,
the material must have been used, and the labor employed,
in the sewer.   The effect of his agreement was that he would
make payments to the plaintiff upon its contract with Wil-
liams, in accordance with the authority granted in the power
of attorney, for materials which, pursuant to its contract, it
might furnish for the sewer.   To that extent he bound him-
self to the plaintiff, and no further.   The duty of Horner,
therefore, under his agreement, was to apply the money real-
ized by him from the city warrants in payment for such of
the material furnished by the plaintiff as was used in the
sewer.   If he did make such application of the money, he
has fully performed his agreement; if he did not, then he is
liable only for the amount received, which was not so applied.

According to the court's findings there were certain arti-
cles delivered to Williams by the plaintiff which were not
embraced in their contract.   Of course for those articles there
could be no recovery in this action against any person.   This
is conceded by counsel; but the findings show a considerable
quantity of material furnished by the plaintiff in accordance
with the terms of its contract, which was not used in the
sewer, and a portion of which was replaced by like material
purchased from the Cambria Company.   It is this furnished
and unused material which is the real subject of the present
controversy.   It is contended by plaintiff's counsel that the

defendants are liable for the whole amount of sewer pipe, specified in the contract, which was delivered to Williams, no matter what use was made of it; that it was not incumbent upon the plaintiff to see that the pipe was actually placed in the sewer; and that its responsibility ceased when the pipe was delivered to Williams upon his order. As between the plaintiff and Williams, we do not question the soundness of the proposition. We do not see anything in the contract which requires that, in order to fasten a liability upon Williams, the materials should have been actually used in the sewer; but, even if it were otherwise, Williams would hardly be permitted to say that articles embraced in the contract, and ordered by him to be used in the sewer, were not so used; and if this suit had been brought against him alone we would be compelled to admit the force of counsel's argument. But the principle contended for had no application whatever to Horner. He had nothing to do with the ordering of the materials or with the obligations to each other which were assumed by the plaintiff and Williams in their contract. He had no control over the disposition to be made by Williams of the material when delivered. If Williams had refused to receive it at all, and had repudiated his entire contract with the plaintiff, no liability of any kind would have attached to Horner. He simply took upon himself, as trustee, the duty of making certain payments, specified in his power of attorney. Whatever of plaintiff's material was used in the sewer, he agreed to pay for out of the moneys received by him for city warrants. If none of the material was used, or if he was unable to realize any money for the warrants, he would owe the plaintiff nothing.

The court found the contract value of all the sewer pipe which the plaintiff delivered to Williams, and deducted only the amount of the payments, and the value of such articles as were not included in the contract; and held the defendants chargeable with the entire amount of pipe contracted for, which Williams had received. Judgment was entered accordingly. This was erroneous. The findings show that a

considerable quantity of 15-inch pipe, 6 × 18-inch Y junctions, 6 × 15-inch Y junctions, 6 × 12-inch Y junctions, and 6 × 9-inch Y junctions, was not used in the sewer; and none of the 6-inch pipe was so used.    No duty rested upon Horner to pay for this unused material, and its price should also have been deducted from the sum total.    In this way a correct result could have been reached.    But we think a more simple method of adjusting the account between the parties is, instead of finding a gross sum and making deductions, to ascertain the contract value of the particular materials delivered under the contract, which were used in the sewer.    For the excess, if any, of such value over the payments made, the plaintiff would be entitled to judgment.    If there is·no excess, the judgment should be for the defendants.    By the terms of the contract the sewer pipe was to be delivered to Williams at the rate of seventy per cent discount from the list price. The amount delivered and used is shown by the findings. The list price appears in evidence and is undisputed.    The following statement shows the amount of pipe delivered by the plaintiff and used by Williams in the sewer, the list price, the discount, the contract price, and the total value:

|  | List Price. | Discount. | Contract P. | Total. |
|---|---|---|---|---|
| 2,262 ft. 21-in. sewer pipe ...... | $2.00 per ft. | 70 per ct. | $ .60  per ft. | $1,357.20 |
| 2,904 ft. 18-in. sewer pipe ...... | 1.50 per ft. | 70 per ct. | .45  per ft. | 1,306.80 |
| 2,570 ft. 15-in. sewer pipe ...... | 1.00 per ft. | 70 per ct. | .30  per ft. | 771.00 |
| 6,222 ft. 12-in. sewer pipe ...... | .75 per ft. | 70 per ct. | .22.5 per ft. | 1,399.95 |
| 22,508 ft. 9-in. sewer pipe ...... | .50 per ft. | 70 per ct. | ·.15 per ft. | 3,376.20 |
| 30 pieces 21x6 in. Y junctions. | 8.00 per p. | 70 per ct. | 2.40 per p. | 72.00 |
| 57 pieces 18x6-in. Y junctions. | 6.00 per p. | 70 per ct. | 1.80 per p. | 102.60 |
| 50 pieces 15x6 in. Y junctions. | 4.00 per p. | 70 per ct. | 1.20 per p. | 60.00 |
| 459 pieces 12x6-in. Y junctions. | 3.00 per p. | 70 per ct. | .90 per p. | 413.10 |
| 657 pieces 9x6-in.  Y junctions. | 2.00 per p. | 70 per ct. | .60 per p. | 394.20 |
|  |  |  |  | $9,253.05 |

This sum of $9,253.05 was all that Horner was bound by

his agreement to pay out of the proceeds of the warrants turned over to him.   The amount paid was $9,766.03, which is considerably in excess of that sum.   The judgment should therefore have been for the defendants, and inasmuch as it was not, it will be reversed with instructions to the court below to proceed in accordance with this opinion.

*Reversed.*