## MAURICE JOYCE

### *v.*

## THE CITY OF EAST ST. LOUIS.

1. LICENSE—*power to require license for vehicles construed.* A provision in a city charter gave the power " to license, tax and regulate and control wagons and other vehicles conveying loads in the city; to prescribe the width and tire of the same, the weight of loads to be carried and the rates of carriage:" *Held,* that, under the rule of strict construction applicable to such powers, the authority to license was qualified by the clause for prescribing rates of carriage, and was applicable only to such vehicles in respect of which it is proper and customary with municipal authorities to prescribe rates of carriage, viz: those used by common carriers in the city for hire.

2. POLICE REGULATION—*rates of carriage by carriers.* The fixing of the rates of carriage by hackmen, draymen and the like, is an ordinary police regulation to protect the public against extortion and imposition on the part of those engaged in the business of common carriers for hire. One using a vehicle not for hire, but only in the course of his ordinary private business, does not come within the reason or necessity of any such municipal regulation.

APPEAL from the City Court of East St. Louis.

Mr. M. MILLARD, for the appellant.

Mr. L. H. WHITE, for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

. This was a prosecution for the alleged violation of an ordinance of the city of East St. Louis. The ordinance is as follows:

"No person, firm, company or corporation, shall, without complying with the provisions of this ordinance, use, or cause to be used, any *wagon, dray, cart or other vehicle of burden to convey loads,* within this city, or on the streets of this city, or hire out, or keep for hire or use, or cause to be used for hire, in the transportation of persons or property from one part of the city to another, or from places within to places without the city, or from places without to places within the city, any hackney-carriage, omnibus, baggage-wagon, buggy, dray, cart, wagon or other vehicle."

Then follow provisions requiring the owner or owners of the vehicles mentioned above to take out a license, fixing the rates. The authority claimed for the passage of the ordinance is under this provision of the city charter of 1869, giving power—

"To license, tax and regulate and control wagons and other vehicles conveying loads in the city; to prescribe the width and tire of the same, the weight of loads to be carried and the rates of carriage."

. The admitted facts were, that defendant kept a family grocery store in the city, and had used a one-horse spring-wagon, without having a license therefor, in delivering goods sold by retail, to his customers, and in bringing loads of goods from St. Louis, Mo., where he purchased stock for retail at his store; that he never used the wagon for hire, or otherwise

than in the prosecution of his business as a grocery merchant.

The question made is, whether defendant was required, under the ordinance and provision of the charter, to take out a license.

The charter authority is, to license vehicles conveying loads, and prescribe the rates of carriage.

To license and to prescribe the rates of carriage, alike apply to the vehicles named; so, it is only such vehicles which are in contemplation as the subjects of license, in respect to which the rates of carriage are to be prescribed. It can not be supposed that it was intended to fix rates of carrying in respect of such vehicles as should only be used by persons in the prosecution of their ordinary private business. Any provision of that sort is unknown in our legislation, and the enactment or the authorizing of such a provision can not be imputed to the legislature, unless the intention to that effect is expressed in clear and unmistakable terms. It is otherwise as to another class of vehicles—those used in the exercise of the employment of carrying for hire. In respect to such vehicles as those used for hire by hackmen and draymen, and the like, it is customary with municipal authorities to regulate and fix the rates of carriage. It is an ordinary police regulation, to protect the public against extortion and imposition on the part of those engaged in the business of common carriers for hire. One using a vehicle not for hire, but only in the course of his ordinary private business, does not come within the reason or necessity of any such municipal regulation. The provision of the charter as to prescribing the rates of carriage can reasonably apply only to such vehicles as are used for hire.

Under the rule of strict construction, which must be applied in such a case, we are of opinion that the authority here to license is qualified by the clause for prescribing the rates of carriage, and that the true construction of the charter provision is, that it does not authorize the licensing of all

vehicles conveying loads in the city, but such, only, of them in respect to which it is proper and customary with municipal authorities to prescribe the rates of carriage, viz: those used for hire by common carriers in the city for hire.

A somewhat analogous provision in the charter and an ordinance of the city of Chicago came under consideration in the case of *Farwell et al.* v. *City of Chicago*, 71 Ill. ——, where it was held not to apply to the case of wagons used by the defendants in the regular course of their business as wholesale merchants, but that it only extended to the wagons of common carriers for hire.

The case of *Gartside* v. *City of East St. Louis*, 43 Ill. 47, is cited by appellee's counsel as sustaining the validity of a like ordinance with the one in question.

That decision was made under the charter of 1865. The provision in that charter upon the subject was, "to direct, license and control all wagons and other vehicles conveying loads within the city, and prescribe the width and tire of the same." As the provision stood in the charter of 1865, the authority was general, but as it now stands in the charter of 1869, the power has been qualified, as we hold, by adding to the old provision the words, "weight of loads to be carried and the rates of carriage." No language was employed in the provision of the charter of 1865 showing an intention to restrict the operation of the provision to vehicles used for hire. We are of opinion that the difference of language warrants the difference of construction.

Holding that appellant did not, by the acts complained of and admitted, incur the penalty claimed, for not taking out a license for his wagon, the judgment of the court below must be reversed.

*Judgment reversed.*