### J. McCAULEY v. STATE OF NEBRASKA.

FILED FEBRUARY 6, 1909.   No. 15,843.

1. **Licenses: VEHICLES USED FOR HIRE.** A city charter conferring upon the council power "to levy and collect a license tax on * * * hacks, drays, or other vehicles used for pay within the city, and to prescribe the compensation for the use of such hacks, drays and other vehicles," is insufficient to authorize the city council to exact a license tax from persons the regulation of whose compensation is not permitted.

2. ————: ————. The owner of wagons kept by him for the purpose of renting them to various firms under monthly contracts, each wagon being kept for the exclusive use of the firm contracting for it, the same being under the direction and control of the various firms having monthly contracts for said wagons, and who does not hold himself out as ready to serve any person who may have goods or merchandise to transfer, is not the owner of vehicles used for pay, nor is his compensation subject to control by the city council within the meaning of the charter provision above quoted.

ERROR to the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Reversed.*

*Charles C. Montgomery,* for plaintiff in error.

*Herbert S. Daniel, contra.*

EPPERSON, C.

The plaintiff in error was prosecuted in the police court in the city of Omaha upon a complaint charging that the

plaintiff in error did "hire out and keep for use and hire, and caused to be kept for use and hire for the transportation of goods, a wagon and vehicle without first having obtained a license for said vehicle so used," etc. On appeal to the district court from a judgment of conviction he was again convicted. A trial was had upon an agreed statement of facts, in which it appeared that the plaintiff in error as manager of a corporation maintained and kept horses and wagons which were engaged by various firms under monthly contracts for hauling, each wagon being kept exclusively for the firm contracting for it. The drivers and men employed upon the wagons were in the employ of the transfer company, and the vehicles and men driving them were under the direction and control of the various firms having monthly contracts for said wagons. The wagons are never kept at any of the public stands designated by the board of fire and police commissioners for vehicles licensed in chapter 94 of the ordinances of the city of Omaha. The wagons have painted on them the names of the firms which have the monthly contracts for them, and are never used for the carrying of single loads of goods, nor in any other way except in the ordinary business of delivering merchandise at contract rates by the month.

The ordinance under which the plaintiff in error was arrested declares it unlawful for any person to hire out or keep for use or hire for the transportation of goods, merchandise, fuel, building material, or any other article or thing, any dray, cart, wagon or other vehicle so used. A penalty for a violation thereof is imposed. The provision of the chapter which authorized the ordinance in controversy is section 7677, Ann. St. 1907, as follows: "The mayor and council shall have power to levy and collect a license tax on * * * hacks, drays, or other vehicles used for pay within the city, and may prescribe the compensation for the use of such hacks, drays and other vehicles." At the outset it may be observed that the power vested in the city council is a police power, and

not one giving authority to levy taxes. The charter pro-
vision is evidently intended for the purpose of protecting
the public, and for this purpose requiring or authorizing
the regulation of the business engaged in by draymen or
hackmen or others, who, in fact, are common carriers.
The evidence is insufficient to show that the plaintiff
herein was a common carrier. There can be no doubt
but that he is engaged in the business of renting wagons
and teams to persons having goods to haul, and that he
receives a compensation or profit therefor. But he does
not hold himself out as ready to serve any person who
may have goods or merchandise to transfer. He engages
only to rent or hire his wagons and teams by the month
to persons of his own selection, who may choose to accept
his terms and enter into a contract with him. We are
convinced that the business which he conducts is not
such as would authorize the city council to prescribe a
compensation which he is entitled or required to receive
from his patrons. In *State v. Robinson,* 42 Minn. 107, it
was held that the provision in a charter authorizing the
city council " 'to license and regulate hackmen, draymen,
expressmen, and all other persons engaged in carrying
passengers, baggage, or freight, and to regulate their
charges thereon,' applies only to those who are engaged
in business as carriers of persons or property for hire,
and not to those who, not being engaged in such business,
merely hire out teams and vehicles to those who have
property to transport, the hirer himself using and con-
trolling the team and vehicle." The facts in the above
case were very similar to the facts as stipulated in this
case, and the provision of the city charter upon which the
ordinance was founded, although worded differently, is
as comprehensive as that of the Omaha charter.

A former charter of the city of Chicago conferred
power upon the city council as follows: "To license, reg-
ulate and suppress hackmen, draymen, carters, porters,
omnibus drivers, cabmen, carmen, and all others   *   *   *

31

who may pursue like occupations, with or without vehicles and prescribe their compensation." Although the power is expressed in more specific language than that given to the city of Omaha in its charter, yet the construction placed upon the Chicago charter in *Farwell v. City of Chicago,* 71 Ill. 269, may well apply to the Omaha charter. Therein the court said: "The spirit of the ordinance is to bring the class of carriers therein named under the police regulations of the city. It is designed to operate upon those who hold themselves out as common carriers in the city for hire, and to so regulate them as to prevent extortion, imposition and wrong to strangers, and others compelled to employ them, in having their persons or property carried from one part of the city to another. This is a rightful exercise of the police power."

It is incompetent for a municipality to prescribe rates of carriage upon vehicles used as the plaintiff in error uses his. The authority to license is qualified by that clause of the charter provision which permits the city council to fix the compensation. In other words, the city council has no authority, under the charter provision depended upon, to exact a license fee from persons the regulation of whose compensation is not permitted. The ordinance expressly avoids fixing a compensation for the business engaged in by the plaintiff in error, and it is not even contended by the city that the council could exercise such power. Under a charter provision authorizing a license tax to be imposed upon vehicles conveying loads, and to prescribe the rates of carriage, it was held that "to license and to prescribe the rates of carriage, alike apply to the vehicles named; so, it is only such vehicles which are in contemplation as the subjects of license, in respect to which the rates of carriage are to be prescribed." *Joyce v. City of East St. Louis,* 77 Ill. 156. Plaintiff in error did not keep wagons used for hire within the meaning of the charter. The contracts under which he was employed did not apparently make him a bailee of the property transported upon his wagons. His compensa-

tion was in the nature of a rental, and not a charge to be determined upon the circumstances attending each transfer made.

We are satisfied that the judgment of conviction was wrong, and recommend that it be reversed and this cause remanded for further proceedings.

DUFFIE, GOOD and CALKINS, CC., concur.

By the Court: For the reasons given in the foregoing opinion, this cause is reversed and remanded to the lower court for further proceedings.

REVERSED.