Price, J.
The city of Columbus and its executive officers rely on Subdivision nine (9) of Section 1536-100, Revised Statutes, as authority for the passage of the ordinance involved in this proceeding. That subdivision reads:
“9. To regulate the use of' carts, drays, wagons, hackney coaches, omnibuses, automobiles and every description of carriages kept for hire or livery stable purposes; and to license and regulate the use of the streets by persons who use vehicles, or solicit or transact business thereon; to prevent and punish fast driving or riding of animals, or fast driving or propelling of vehicles through the public highways; to regulate the 'transportation of articles through such highways and to prevent injury to such highways from overloaded vehicles, and to regulate the speed of interurban, traction and street railway cars within the corporation.”
Other subdivisions preceding and following, and which compose said section furnish the general powers of municipalities. There are other powers mentioned in Section 1536-100 and 1536-102, Revised Statutes, but they need not be quoted or considered in determining the law of this case. Under the above provision, it is claimed, the council of the city of Columbus has passed and threatens to enforce an ordinance requiring any and every one who would enter upon and use any of the streets of such city with any vehicle described in the ordinance, either for hire or livery stable purposes, as in the first clause of the above sub-section, or for *380 any purpose as specified in the second class, to apply for and obtain a license and pay the prescribed license fee, before such person can lawfully use the streets, and to use such vehicles on the streets without the license is a misdemeanor (so says thé ordinance) for which the owner or controller of the vehicle may be fined in a substantial sum with costs. The city authorities assert that this ordinance is enforceable not only upon resident users of the streets, but also against non-residents of the city who may come in with vehicles named on business of any kind or for purposes of pleasure or social intercourse. In the case at bar they would enforce the ordinance against farmers and gardeners who reside and conduct the farming and gardening outside the city.but who desire to market in the city part of the products of their farms and gardens; and who may visit the city to pay taxes or render jury service or attend couft as a litigant or witness. Or if the spirit of visitation would lead the nonresident user of the vehicle to pass through Columbus on the proper way to reach another city, town, or county, he must obtain a license to use Columbus streets, or go around the city on some other route.
It is one of the findings of the circuit court, and also a fact agreed upon, that when the action on review was commenced, there were four thousand farmers and gardeners, residing outside the city, but in Franklin county, who raise and market the produce of their farms and gardens, and that each owns on an average one two-horse wagon, and one pleasure carriage or spring wagon, drawn by one horse. As it has been found, that each of the four thousand farmers owns, on an average, one two-horse wagon and a one-horse buggy or spring *381 wagon, these farmers would be required to pay $32,000 of the estimated $50,000 to keep the streets in repair — certainly a liberal draft on non-residents who may use the streets often or seldom. There were and are other farmers and gardeners living in the counties adjoining Franklin county, who haul the products of their farms and gardens to the city of Columbus.
The petition alleges and the answer admits that the plaintiffs were required to pay taxes annually or semi-annually in the said city, as the county seat, and their vehicles were used at such times for that purpose, and at other times, as to some of them at least — plaintiffs used the vehicles to convey their children to schools in the city. There is no exception or exemption of any one no matter how circumstanced, if he desires to use one or more of the designated vehicles on the streets of Columbus. You must pay before you enter, is the warning displayed to every non-resident owner of vehicles. We do not mean that pay is exacted on each use of the streets — but there must be a license to cover the period of such use, be it for a year or part of a year. If he enters without a license, he is liable to a fine ranging from five to fifty dollars. When asked for a reason for such demands, it is said, the use of the vehicles mentioned in the ordinance, tends to wear out said streets, and necessitates constant care and repair thereof, and so the court found, but it is not and perhaps could not be found, how much the non-resident owners contributed to the improvement of the streets by means of general road taxation, yet they are classed with residents who may constantly use the streets with heavier vehicles bearing heavier burdens. It is further said *382 in defense, and so found, that it will cost about $3,000 per annum to furnish necessary clerical services, the license blanks, tags and numbers to issue the license and put the ordinance into operation; and it is also found that the care and repair of the streets will cost not less than $50,000 per annum. Does the statute quoted authorize the ordinance in this case, if it applies to non-residents, and is the ordinance reasonable ? The plaintiffs are not tradesmen’ draymen, hack drivers, peddlers, hucksters', or members of a profession within the city, but they are producers living on their own farms and operating farms or gardens outside of the city limits.
These farmers own real and personal property outside the city on which they pay all taxes and assessments provided by law, and these vehicles are a part of such personal property so taxed, and both their real and personal property is subject to taxes to keep in repair the public highways in their vicinity, toward which, property within the city contributes little if anything. Moreover, the owner of vehicles who resides in. the city has free use of the country roads, and without let or hindrance, may operate them on such roads whenever and as often as he may choose. The high speed automobile or touring-car of city resident can rush along the country highway as a terror to the farmer, and nothing is exacted but what he pays the state at large for license, the benefit of which the farmer can receive but a trifle if anything. The big brewery wagon can be freely used to deliver beer to villages within or without the county, and heavy moving-vans may traverse the country roads in pursuit of that line of business, and the country *383 folk can put up no bars to prevent it, or exact a fee for the privilege. The ordinance therefore lacks the spirit of reciprocity and imposes a burden upon the farmer, in addition to the one he must bear alone.
Another observation is also in order. If the city of Columbus may enforce such ordinance against non-residents, so may any other municipal corporation, of which there are several within Franklin county, and if such measures should be adopted by them or some of them, a farmer whose way to Columbus lies through such town or city, would be required to pay further tribute to repair streeets. And as it is found that farmers and gardeners living-in counties adjoining Franklin county, haul the farm and garden products to Columbus,' each municipality through which such farmer would pass could demand the payment of a license fee for the use of the streets until license would become prohibition. What Columbus can legally do in this respect, any other Ohio municipal corporation can do — demand an entrance fee as a condition to the use of the public highway. If such farmer uses one of the vehicles named to pass through Columbus and Franklin county on a mission of business 01-pleasure, even occasionally, or once in a year, he is required to obtain the license.
While it may be within the law for a municipal corporation to require its resident citizens to pay a license fee for their use of the streets, (but we do’ not so decide), we are not ready to hold that it can bar from its streets non-residents and that it may fine one who has the temerity to disregard die exaction of the fee.
It has been said that it is but fair for the plaintiffs' and others like them to pay something towards keep *384 ing up street repairs, because they market their farm and garden products in the city, Columbus being their nearest and best market. At first glance this sounds rather plausible, and if the city is self-sustaining and is independent of the trade and business of such farmers, the authority to demand license fee might be on better footing. But the city shut up to itself would die. It obtains most of its sustenance for man and beast from the farmers and gardeners without its limits, and it needs their trade, and to furnish what the city needs vehicles must be used on the streets. Merchants of all classes are largely patronized by such persons, and the commodities of one are exchanged for the commodities of the other; or money, the medium of exchange, is paid by one to the other. Therefore the city is not independent and self-sustaining. It needs the farmer as much as the farmer needs the city.
We are greatly impressed with the view that as to the plaintiffs the ordinance is unreasonable and unfair.
We are not favored with a reference to any case in which this court was called upon to decide the present question. Counsel cite Marmet v. State, 45 Ohio St., 63, as some authority, but in that case an act of the legislature was under consideration. It was entitled: “An act to provide a license on trades, business and professions carried on in cities of the first grade of the first class, and providing the enforcement and collection of fines and penalties for carrying on business without a license, and for other purposes.” One of the questions discussed was the invalidity of the law because it was not of uniform operation, though on a general subject. *385 Another claim was, that it was invalid because the last clause of Section 29 excepted from its provisions farmers marketing the products of their farms in the city.
Marmet was a citizen of Cincinnati, and was arrested on the charge that he had used vehicles upon the streets of Cincinnati without first obtaining a license therefor. It is not necessary to review the points considered and decided in that case, because the contentions here are very different and on facts and under circumstances unlike those in the Marmet case. This court sustained the act includ-' ing said exception as to the farmers.
In the history of the case at bar, we observe that the court of common pleas held that the ordinance is constitutional but that it does not apply to non-residents of- the city. The circuit court held that the ordinance is constitutional, and “applies to nonresidents as well as residents of the city of Columbus, according to the facts of each case, viz: to those who, in the sense of a continued or repeated practice ‘use’ the streets with the vehicles described.” This line of demarcation is very vague and settles nothing, and it is reasonable that both parties now want the question squarely met and decided.
We have light from decisions made in other jurisdictions to which we will give some attention.
In Bennett v. The Borough of Birmingham, 31 Pa. St., 15, it appears that by an act of the legislature, the burgess and town council of Birmingham were authorized to direct all owners of carts, wagons, etc., using the paved streets of said borough to pay such moderate license for such use as they .might, by ordinance, direct. It was held *386 that this did not authorize the imposition of a tax on drays, wagons,- etc., owned by non-residents of Birmingham, and used in carrying goods and produce through the borough from an adjoining-township to Pittsburgh. “The act in question only authorizes the taxation of vehicles belonging to citizens of Birmingham, and those of other persons carrying on some business or occupation in the town of Birmingham, by means of such vehicles. Such statutes and- ordinances are contrary to the usual course of taxation and embarrassing to the public, and ought to be strictly construed.” The ordinance excepted travelers and also farmers bringing their own produce to market.
In the opinion of the court, Lowrie, J., among other pertinent things, says: “There are no doubt inequalities in the burdens which different locations have to bear in regard to roads; but it is impossible to make any better of it by such ordinances as this. If Birmingham may tax all St. Clair township for passing on the streets to Pittsburgh, then St. Clair township ought to be allowed to tax all the people further out — and so with all others similarly situated. There are six or eight municipal corporations at this place, and there is no justice in one more than another having such ordinances; and if they all have them, what is the result? No man having his business in an adjoining township, can drive to town in relation to it without paying a license for his cart or wagon to some one or more corporations, while the people of these corporations can drive through the county at pleasure and without license. And then a citizen in one town cannot get a bag of flour hauled across the line into another, without-finding a drayman who has been *387 able to pay a license for both, nor hire a hack to drive out into the country, without seeing that it has a license for each of the towns through which it has to pass.” The entire opinion is worth consideration and is directly in point.
In Commonwealth v. Stodder, 2 Cushing, 562, the supreme judicial court of Massachusetts had under consideration the validity of certain regulations made by the mayor and aldermen of the city of Boston. The first paragraph of the syllabus and opinion relate to the kind, size, etc., of vehicles that might be used on the streets, and the right to designate certain streets for certain kinds of vehicles, etc. In the second and third paragraphs it is held that the statute (which is copied in the report of the case), did not authorize the'mayor and aldermen of Boston to require payment of money to the city by persons resident of Roxbury, who set up and drive omnibuses and stage coaches from Roxbury to Boston and from Boston to Roxbury, for the conveyance of persons for hire, as a tax or duty upon such vehicles, before using the same.
In The City of St. Charles v. Nolle, 51 Mo., 122, we find the following proposition stated by the supreme court of that state: "So much of the ordinance of the city of St. Charles requiring a license tax for wagons used for pay, as attempted to impose a tax upon wagons of outside residents engaged in hauling into and out of the city, was void as not being authorized by the charter of that city, and the legislature could give the city council no authority to pass such an orfb'nmice. The tax being upon ents’de citizens and for the benefit of those living in the city, would be in effect taking property for private use; that is, for the use of a particular com *388 munity of which the outside citizens form no part.”
The legislature of 'New Jersey enacted a statute authorizing the council or. other governing body of a city, incorporated borough, etc., to make ordinances, to license and regulate cartmen, hacks, milk wagons, etc., carriages and vehicles used for transportation of goods of any kind, etc., and to fix the rate to be paid for license. Cary v. North Plainfield, 49 N. J. L., 110, is a case where the city of Plainfield in that state passed a license ordinance under favor of above statute. Cary was licensed for that city where he resided, and he was hired to go into the borough of North Plainfield for two loads of furniture to be brought into said city of Plain-field. The borough of North Plainfield had a similar ordinance for license for that locality, which Cary did not observe and he was arrested for its violation. ' In the opinion of the supreme court of that state it is said: “The inconvenience attendant upon the exercise, by every municipality of the state of the power of excluding from its limits all unlicensed vehicles engaged in transporting goods or passengers for hire, is manifest. Its legitimate operation would require the owners of such vehicles to obtain licenses not only from the authorities of the place where their business has its headquarters, but also from every neighboring town into which their casual engagements might call them, or else to unload their vehicles at the border line. A general law having effects so burdensome or so absurd is not to be anticipated, etc. Its terms are satisfied by holding that license taxes are to be imposed only by that municipality in which the business or occupation is carried on or conducted.” After citing: Commonwealth v. Stodder, supra, the court adds: *389 “but when a power to tax for revenue is claimed,, something more than mere temporary presence in the borough must be shown. It must appear that the business to be taxed is carried on in the municipality, and occasional passage or transportation into or through or out of the borough incidental to the pursuit of a business elsewhere established cannot be fairly regarded as localizing the business there,” etc. The court held Cary not liable.
In City of East St. Louis v. Bux, 43 Ill. App., 276, we find the following: “In a controversy touching the violation of a municipal ordinance requiring truckmen and other common carriers to be licensed, the penalty provided for was intended to be imposed upon those only who carried on a business within a given municipality without a license, and that defendant, who hauled goods from another city wherein he was licensed, to a depot within the boundaries of complainant, could not be considered as having been guilty of a breach, of said ordinance.” The authority to license conferred upon municipalities by the statute is construed as limited to those who engage in or carry on business in East St. Louis. Bux, the defendant in error, resided in Bellville, and carried on his business there under a license.
Another case from Illinois is The City of Collinsville v. Cole, 78 Ill., 114, of which the head-note is the following: “An ordinance that 'There shall be levied upon every hackman, drayman, omnibus driver, carter, teamster, cabman or expressman, and all others pursuing a like occupation, the sum of ten dollars for a license,' was held not to embrace a farmer driving his team through the city. The purpose and object of such an ordinance is to impose *390 a tax upon a business, calling, or occupation, and not upon one who occasionally hauls a few loads, in an emergency, for another, when that is not his calling.”
The charter of the city of East St. Louis gave the city power “to license, tax, regulaté and control wagons and other vehicles conveying loads in the city; to prescribe the width of tire of same, the weight of loads to be carried and rates of carriage.” In Joyce v. The City of East St. Louis, 77 Ill., 156, the supreme court of that state held that such authority as to license applied “only to such vehicles in respect of which it is proper and customary with municipal authorities to prescribe rates of carriage, viz: those used by common carriers in the city for hire”; and “one using a vehicle not for hire, but only in the course of his ordinary private business, does not come within the reason nor necessity of any such municipal regulation.”
Akin to this is the decision in Farwell et al. v. City of Chicago, 71 Ill., 269. See also City of Chicago v. Collins, 175 Ill., 445. The ordinance involved in the last case was said to be founded on authority conferred by the statute of Illinois known as the general incorporation act under which the city was organized. Clause 9 of Section one (1), Article 5, confers power to regulate the use of streets. An ordinance was passed providing that all vehicles used upon the streets of the city, including those for private use, for pleasure, etc., should pay an annual license fee, and that any one using a vehicle on street without first obtaining a license, should be fined. The parties who procured an injunction against the enforcement of that ordinance were owners of bicycles or carriages, not used *391 for traffic. or carrying merchandise for hire, but for private use and as a means of locomotion from place to place. The supreme court held the ordinance to be illegal. In the opinion, on page 455, supra, the court said: “The streets and alleys of a city a're held in trust by the municipality for the use of the public, for purposes of travel thereon and as a means of access to and egress from buildings abutting thereon or lots adjacent thereto. The right to travel on and along the streets of a city belongs to the general public, and does not belong to its denizens alone. The right to travel being in the general public everywhere, all persons have a right to pass along and use the streets and alleys of a city in all their parts, the full width and length thereof. The municipality, which is a mere trustee of the public and holds the streets and alleys in trust for that public, cannot deny the right of the public to use the streets and alleys. It cannot assume an exclusive ownership, and deny the rights of the beneficiaries under their trust and arrogate to itself a power greater than that of a mere trustee, and prevent the use of the streets and alleys by individual members of the public. The right of the public to use the streets is the right to use them for purposes of travel in the recognized methods in which the public highways of the state are used. Any method of travel may be adopted by individual members of the public which is an ordinary method of locomotion, or even an extraordinary method, if it is not, of itself, calculated to prevent a reasonably safe use of the street by others. If a right exists in a city council to impose a license fee, by way of tax, on every person using wheeled vehicles thereon, it may in like manner impose such license fee for *392 such use of the streets in every other .manner of locomotion or travel, and reach the man on horseback or the pedestrian walking' along' the same.” And on page 456 it is said: “The city council may regulate the use of the streets and alleys to the extent that it may require sidewalks exclusively reserved for use by pedestrians, and exclude certain character of loads and regulate the width of tires on vehicles used on a certain character of pavements, and provide that the rate of speed shall be much less on certain streets than on others, and otherwise regulate the use of the streets, having in view solely the welfare and safety of the public. The city may also regulate certain occupations, such as hackmen, draymen, expressmen, and the like, for such regulation is of a police character, having reference to the general welfare, as a means of preventing improper exactions and extortions; and for the same reason, a license may be exacted for vehicles used in the transportation of goods and merchandise, or of passengers, or for other purposes of traffic; but such license is an occupation license, and not one for the use of the streets. The license in the latter named case is designed to operate upon those who hold themselves out as common carriers, and a license may be exacted from such as a proper exercise of police power, but no reason exists why it should be applied to the ■ owners of private vehicles used for their individual use exclusively, in their own business, or for their own pleasure, as a means of locomotion.” See Garden City v. Abbott, 34 Kans., 283.
There are other cases that can be cited to same effect, and there* are also cases which hold some *393 what at variance from principles heretofore laid down in this opinion.
In a multitude of cases we have examined, the words “license” and “tax” are used interchangeably, and some courts treat of them as meaning the same thing. But when they endeavor to sustain the law or ordinance requiring a license, they locate the authority under the police power of the state and not its taxing power, for by such shifting of authority, some constitutional limitations are avoided.
In other cases the charter or enabling act of the city expressly defined the power to license, or tax, as in Tomlinson v. City of Indianapolis, 144 Ind., 142. And it is but fair to say that the statutory authority for the ordinance, its terms and scope, must be consulted in order to properly weigh the force of numerous adjudications.
Again, the right to exact a vehicle license tax or fee has been carefully distinguished from imposing a license on various trades and professions carried on within a municipal corporation, as is held in Chicago v. Collins, supra.
We have given this case that careful and patient consideration its grave importance demands, and • we are unable to agree with the circuit court in its conclusions. Its judgment fixes no satisfactory or distinct line of demarcation as to who will be affected by the ordinance. It leaves open the way for new controversies, because no one can clearly determine whether he is of the number required to pay for a license or not.
We make the ground clear in so far as the plaintiffs in error are concerned, and hold that the nonresident farmers and gardeners cannot be compelled to pay for a license to use the streets in going to *394 and fro from their homes to the city for the purpose of marketing- their products and trading with the merchants of the city or in visiting the city on business or pleasure. As to them the ordinance is unreasonable and invalid.
The ambition should be for a “Greater Columbus” rather than for a walled city.

Judgment reversed.

Crew, C. J., Summers, Davis and Shauck, JJ., concur.