334

**MAYER v AMES et**

Ohio Common Pleas, Hamilton Co

Decided Feb 6, 1937

John D. Ellis, City Solicitor, Cincinnati, and Francis T. Bartlett, Asst. City Solicitor, Cincinnati, for City of Cincinnati.

Cedric Vogel, Cincinnati, and Alfred H. Meyers, Cincinnati, for plaintiff.

## OPINION

By HOFFMAN, J.

Plaintiff brings this action as a taxpayer to enjoin the enforcement of an ordinance recently enacted by the council of the city of Cincinnati to compel persons who operate motor vehicles upon the streets of Cincinnati to have such vehicles inspected at testing stations to be provided by the city.

The ordinance further provides that the operator shall pay a fee for such inspection. Non-compliance with said inspection ordinance shall be unlawful.

Plaintiff claims that said ordinance is unconstitutional and contrary to the statutes of the state of Ohio, and is an abuse of the corporate powers of said city; that the expenses contemplated and provisions for disbursement of fees received from said inspections constitute a misapplication of public funds.

Defendants have filed a demurrer to the petition, claiming that the allegations therein do not constitute a cause of action.

Cincinnati is a city with a home rule charter. Under the provisions of the **Constitution of the State of Ohio, Article XVIII, §7,** "any municipality may frame and adopt or amend a charter for its government, and may, subject to the provisions of §3 of this article, exercise thereunder all powers of local self-government."

Section 3 provides

"Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

See also Syllabus 1, **Greenburg v City of Cleveland, 98 Oh St 282:**

"Sec 3, **Article XVIII, of the Constitution** specifically authorizes municipalities to adopt and enforce **within their limits, such local police * * * regulations,** as are not in conflict with general laws."

Under Article I of the Charter of Cincinnati the powers of the city were declared to be—

"The city shall have all powers of local self-government and home rule and all powers possible for a city to have under the Constitution of the State of Ohio. The city shall have all powers that now or hereafter may be granted to municipalities by the laws of the State of Ohio. All such powers shall be exercised in the manner prescribed in this chapter, or if not prescribed herein, in such manner as shall be provided by ordinance of the council."

Article II provides:

"The laws of the state of Ohio not inconsistent with the charter, except those declared inoperative by ordinance of the council, shall have the force and effect of ordinances of the city of Cincinnati; but in the event of conflict between any such law and any municipal ordinance or resolution, the provisions of the ordinance or resolution shall prevail and control."

From the above articles quoted it may readily be seen that the charter adopted by the city of Cincinnati gives to it the fullest powers of home rule possible, limited only by the constitutional provisions that any ordinance must not conflict with general laws.

The **Constitution by Article XVIII, §7,** allows charter cities to pass such special legislation as their needs require without compelling them to be subject to the old law that municipalities can only operate under laws which have uniform operation throughout the state.

Whatever right the city of Cincinnati possesses "to exercise all powers of local self-government," comes in the first instance from §3, **Article XVIII of the Constitution,** and not from the General Assembly. **State v Carrel, 99 Oh St 220.**

Ordinances 74-18, et seq., of the city of Cincinnati, have been in force for many years, making it unlawful to operate a motor vehicle upon the streets of Cincinnati which is not equipped in certain ways as to brakes, headlights, horns, mirrors, etc. The inspection ordinance makes it unlawful to operate a motor vehicle upon the streets of Cincinnati which has defective brakes, headlights, horns, mirrors, etc. Ordinances of Cincinnati, §74-28A, et seq.

The purpose of the inspection ordinance is to bring to the attention of the operator whatever defects there are in his motor vehicle and to give him reasonable opportunity to remedy those particular defects, and his failing to do so makes the operation of such vehicle unlawful.

Proper protection of the public requires that measures be taken to insure as far as practicable the physical safety of the public.

The great number of automobile accidents which result in death or serious injury makes it the duty of the legislative body to enact such ordinances possible to secure the safety of citizens, by preventing persons using defective automobiles upon the streets of a populous city.

It must be conceded that the enactment of this ordinance falls directly within the police power, which is the source of the power residing in municipal councils, to enact legislation intended to promote public welfare, and it may do so by restraint or compulsion. By police power is meant that which aims directly to secure public safety. Freud on Police Power, §3; **Fitzgerald v Cleveland, 88 Oh St 338, at p. 356.**

There is not only a moral obligation for municipalities to protect and safeguard the public, but by §3632 GC, they are authorized.

"To license and regulate the use of streets by persons who use vehicles * * *."

By §3714 GC municipalities

"Shall have special power to regulate the use of streets to be exercised in the manner provided by law."

The claim of plaintiff that this ordinance is illegal must be considered in connection with the presumption that all laws and ordinances legally passed must be considered valid in the absence of a showing to the contrary, and courts will not interfere except in clear cases of violation of the authority granted. **Board of Health v Greenville, 86 Oh St 1; Leis v Railway Co., 101 Oh St 162; State v Dudley, 1 Oh St 437.** Council is also presumed to have good reasons for the passing of its ordinances and

"We are not authorized to substitute our judgment for that of the council which enacted it." **Fritz v Messer, 112 Oh St 628; State v Deckebach, 117 Oh St 235.**

Plaintiff claims the ordinance is illegal on several grounds. The court will consider these in the order in which they were presented to this court.

1. That the ordinance is unreasonable and discriminatory, since it is not the condition of the particular vehicle that is the cause of accidents, but it is "the nut behind the wheel."

This may be true to a great extent but it is also true that many accidents are caused by defects in brakes, headlights, or in the mechanism of the vehicle which at the time of the accident are unknown to the operator.

In the trial of negligence cases the allegations quite frequently are that the vehicle causing the accident had certain defects and evidence tends to show that the proper operation of such vehicle was prevented because of said defects.

2. Plaintiff further claims that because the ordinance requires all motor vehicles to be inspected that it is not local legislation, for it affects not only residents of Cincinnati, but also non-residents who operate motor vehicles upon the streets of Cincinnati.

We recognize the right of control by our laws and ordinances making operators amenable for exceeding the speed limit, for failure to have certain equipment, and for violation of the traffic laws and ordinances. Why then should they not be subject to an inspection ordinance so that it may be ascertained whether those who use our public streets are operating defective motor vehicles? It may be said that

"The city has no power to legislate for territory outside its limits and every city ordinance bears that limitation whether or not expressed." **State v Deckebach, 117 Oh St 227, on p. 232.**

It is also a principle well established—

"A part of the statute may be void for want of conformity to the Constitution and the remainder valid. Whether or not the infirmity that voids a part affects the entire act, depends upon the connection and dependence on each other of its various provisions." See **R. R. v Com., 31 Oh St, p. 343; Stevens v State, 3 Oh St 453.**

By "all powers of local self-government" is meant the exercise of the functions of government which are local in the sense that they relate to the municipal affairs of the particular municipality.

The ordinance does not attempt to legislate in regard to any matter outside of the territory of Cincinnati, but merely to exercise the right given to it under §3632 **GC,** which declares that municipalities shall have special power.

"To license and regulate the use of streets by **persons** who use vehicles on its public streets."

The state law in regard to motor vehicles does not restrict the power of municipalities to residents only of the state, so why should an ordinance? The state law above quoted uses the word "persons," which evidently means all persons, either residents or non-residents. If it is to be construed as meaning only residents in the state law, when used in the ordinance its meaning should be the same. In other words, if the state law by the word "persons" means only residents of the state of Ohio, by analogy the word "persons" in the ordinance would mean only residents of the city of Cincinnati.

In **Savier v Smith, 101 Oh St 132,** the court quotes with approval the case in 242 U. S. 140, in which the court says:

"The power of a state to regulate the use of motor vehicles on the public highways has been recently considered by this court and broadly sustained. It extends to non-residents as well as residents."

If the state has this power over non-residents, a home rule city has the same right under an ordinance, if this ordinance does not conflict with the general laws of the state, and is enacted within the police power granted it by the Constitution.

There are a number of authorities outside the state of Ohio in which the courts have held that ordinances may apply to non-residents as well as residents, provided no discrimination is made against them on account of their non-residence. 144 Indiana, 142; 55 Tenn., 524; 24 Southern Rep. 952; 24 American Reports, 285; 64 Ga., 128; 48 Ala., 218.

In the ordinance under consideration there is no discrimination for or against non-residents or residents. All are to be subject to the inspection requirements in the same way, by paying the same fee and it affects all in every other respect.

There are other decisions to the effect that where there is no restriction either in the Constitution or the general law, an ordinance which makes it unlawful for any person, resident or non-resident, to drive upon its streets without a license, therefore is valid.

Other authorities hold that ordinances which include all "persons" or "any person" do not include non-residents. See 43 Ill., 276; 77 Ill., 156, and cases cited therein. In effect, that the meaning of such ordinances, no matter what the language may be, is to limit application only to such vehicles to which it is proper and customary to prescribe regulations, and therefore such ordinances would not include non-residents.

The opinion of our own Supreme Court in **Pegg v City, 80 Oh St 367,** is cited and declared by counsel for plaintiff as conclusive against the validity of this ordinance. In that case the court did hold that an ordinance of the city of Columbus, which provided that no vehicle shall be used upon the streets of Columbus unless a license has been obtained was unreasonable and invalid as to users who were non-residents.

We must bear in mind, however, that this decision was rendered before the amendments to our Constitution and before the laws passed in accordance with said amendments which gave home rule powers to charter cities. Columbus in 1909, a non-charter city, did not have the powers of local self-government, such as Cincinnati, a charter city possesses. Further, the ordinance of Columbus required as a condition precedent to the use of the streets by any person operating a vehicle, the obtaining of a license; and prohibited the use of the streets by any one without such license.

In the ordinance of Cincinnati the operation is only made unlawful after defects have been discovered in such motor vehicle inspected and found to be defective, and after there has been a failure to correct such defects.

In 219 U. S. 453, the court held:

"A state (a municipality) is under an obligation to establish necessary and reasonable regulations for the safety of **all persons** engaged in business, or domiciled within its limits, and passengers (operators and passenger of intra-state vehicles) of interstate carriers are entitled while within the state (a municipality) to the same protection of valid local laws as are citizens of the state (municipality)." (Parentheses inserted by the court).

See also 124 U. S., 465; 128 U. S., 96; 234 U. S., 292; 165 U. S., 628.

This ordinance is not an arbitrary one, but is designed to protect non-residents from the operation of defective motor vehicles by residents, and likewise to protect residents from the operation of defective vehicles by non-residents.

The case of **Frisbee v Columbus, 80 Oh St 686,** was decided in 1909, before **Article XVIII, §3,** became a part of our Constitution in 1912, and therefore the court rightfully held that a city only possessed such powers as the laws passed by the legislature

gave them. Since 1912 a charter city possesses all powers of local self-government not in conflict with general laws. 92 Oh St 478, Billings v Railway Co.

If the state, through its general assembly, could pass a law requiring all owners and persons in possession or control of motor vehicles using a public street, to have said vehicles inspected, so could a charter city, through its council, pass an ordinance for the same purpose, provided, of course, such ordinance comes within the provisions of its charter and the state constitution. Goebel v Cleveland Street Railway Co., 17 N. P. (N.S.) 337; Billings v Railway Company, 92 Oh St 479, at page 491.

3. The plaintiff further claims said ordinance is in conflict with the statute licensing motor vehicles; that when a license is secured by a person from the state it gives the driver, if he has a license to drive, the right to operate his motor vehicle when and where he pleases regardless of its condition or state of repair.

The state does not have the exclusive right to license the operation of a motor vehicle. Municipalities may also issue licenses relating to such use.

In State v Deckebach, 117 Oh St 227, it is held that an ordinance of a charter city, Cincinnati, is valid, which makes it unlawful for one to drive a taxicab on the streets of Cincinnati unless he receive a license and furnish a policy of insurance, or a surety bond, to indemnify parties injured through negligence on public streets.

The registration fee to obtain a license from the state is a tax for the raising of revenue and not a license fee for regulation. Savier v Smith, 101 Oh St 132; Fisher Bros. v Brown, 111 Oh St 602; Foltz v Brown, 111 Oh St 646; Firestone v Cambridge, 113 Oh St 57.

Payment of a license fee to municipalities in Ohio is justified in the exercise of police power, and does not depend upon the right to tax for revenue purposes. 14 C.C. (N.S.) 165, affirmed without opinion; Brown v Toledo, 83 Oh St 491.

All fees for inspection under the ordinance are to be used only for the expense essential under the inspection ordinance. No part of said fees is to be used for general expenses of government, or for securing revenue for the city for any specific object or function of government. It is therefore not an excise tax. An excise tax has been defined as a tax imposed on the performance of an act or engaging in an occupation, or the enjoyment of a privilege and includes every form of taxation not a burden laid directly on persons or property. Savier v Smith, 101 Oh St 132.

The granting of a state license under the motor vehicle registration law is the plan, or detail, providing for the imposing of the tax, and the tax is chiefly to raise revenue for the maintenance and repair of public roads and highways. Furthermore, the legislature in the act itself declares that the money collected is a tax. Our Supreme Court in 111 Oh St 602, Fisher Bros. v Brown, and other decisions, declared it to be a tax.

The ordinance provides only for a license fee for the regulation of motor vehicles. The distinction between a license fee and a tax is clearly made in 113 Oh St 57, Firestone v Cambridge.

"Licensing and regulating are an exercise of the police power, while the exaction of an excise tax is an exercise of the taxing power. If the exaction goes no further than to cover the necessary expenses of issuing it, it does not include a tax; but, if it is made a means of supplying money for the public treasury, it is a tax. If the law is to raise money for a specific object, namely, the maintenance and repair of the public roads, it is a tax. If the law (or ordinance) raised sufficient to pay only the expense of administering it, it would not be a tax at all. It would be in the nature of a license." See 113 Oh St 57, supra, on page 63.

4. Plaintiff further contends that the ordinance is not valid because it conflicts with the general laws of the state.

"General laws, as used in §3, Art. XVIII, of the Constitution refer to laws passed by the legislature which are of general application throughout the state." Leis v Railway Co., Syl. 2, 101 Oh St 162.

In Syllabus 3 the court says:

"When a municipality in the exercise of its constitutional authority has adopted local police regulations to promote the public health and safety, every intendment is to be made in favor of the lawfulness of such regulations, and courts will not interfere except in clear cases of violation of the authority granted."

There is no general law, nor, in fact, any law of the state requiring inspection of motor vehicles, and so the ordinance does not forbid or prohibit that which the state

law permits or licenses. The state law, as shown above, is a tax upon the property of the motor vehicle itself, different classes of motor vehicles being subject to different rates of taxes. The ordinance requires the payment of a license fee which has to do with the regulation of the motor vehicle which is to be operated and is not in conflict with any general law on the same subject, because there is no general law upon this subject.

Referring again to 117 Oh St 232, State v Deckebach, the court held that the operation of a taxicab in Cincinnati, a charter municipality, was unlawful unless the owner of the taxicab make an application for license and furnish to the city auditor a policy of insurance, or a surety bond, against loss or injury from the negligent operation of such taxicab and that said ordinance is valid and constitutional; that said ordinance comes within the authority of the city in the exercise of its powers of local self-government, and this exercise gives to the city the right to adopt and enforce within its limits local police and other similar regulations.

Furthermore, such an ordinance is authorized under §§3632 and 3714 GC, which give cities the right to license and regulate the use of streets by motor vehicles. If such an ordinance is valid, certainly the ordinance under consideration, which only requires inspection and correction of defective parts, is valid and is designed to prevent and protect the public from injury, there being no state law on the subject, and compliance being required of all without discrimination. No one desires to wilfully injure another by driving a defective motor vehicle, but many, through ignorance or carelessness, have no knowledge of defects which may exist in the motor vehicle being operated. The appalling increase in the number of accidents caused by motor vehicles not only makes it the duty of the municipality—but the state—by appropriate legislation, to take all possible steps within the Constitution, and through police power granted to each, to pass such legislation as will prevent accidents. Operating a motor vehicle without defects may not be a remedy for all accidents, but it would at least remove the cause of many accidents.

5. The contention that the legislature, by certain laws (§614-66 GC) and other sections, has given the Public Utilities Commission special authority over public conveyances, does not, in the opinion of the court, in any way limit the right of municipalities to regulate the use of its streets by motor vehicles in general, nor does it mean that the state has preempted the field of regulating the operation of motor vehicles, because, in certain respects, it has given the Public Utilities Commission control over public conveyances, and authorizes such Public Utilities Commission to formulate rules for the operation of such particular vehicles.

It did not delegate to the Public Utilities Commission the power of inspection of motor vehicles such as is given under the ordinance in question. Other charter cities may adopt similar provisions as to inspection, if this ordinance in Cincinnati proves practical and efficient in preventing accidents and protects the public from death and injury. The state may some time in the future also pass a law which may have general operation throughout the state, but the fact that Cincinnati has taken the initiative in passing an inspection law is conclusive that Cincinnati has preempted the field of regulating the use of motor vehicles by inspection and correction of defects.

6. Plaintiff contends that if the ordinance is valid in every other respect pertaining to inspection, that 74-28 H of the ordinance, which provides that the fees collected shall be used only for the purpose of paying the expenses of such inspection, is invalid; that under §3675 GC the money collected should be used for the maintenance and repair of public roads.

As we have stated above, the fee to be collected is a license fee, and not a tax. It is true that all taxes upon motor vehicles must be paid into the general fund and used only for the maintenance and repair of public roads, but that is not true in regard to license fees, as shown above. The distinction between a tax and a license fee is that in a license fee the money can be used only for the purpose of paying the expense of the operation of the ordinance or law, and could not be used as a means of revenue either for the general or special expenses of the government. The Constitution in the articles quoted, and the decisions of our Supreme Court permit the levying of a license fee, and if the fee was to be used for any other purpose than for the expense of the administration of the ordinance, it would cease to be a license and would be a tax.

We hold that in this ordinance the pay-

340

ment of the required fee is a license fee and not a tax, and therefore the money derived therefrom does not have to be paid into the general fund to be used for the maintenance of public roads and highways, but may be used solely for the expenses of the administration of the ordinance. If this be so, there cannot be a misapplication of public funds.

In a recent case reorted in Vol. 4 (2d) Northeastern Reporter, p. 78, Evanston v Wazan, in advance sheet of November 4, 1936, it was held that a similar inspection ordinance of the city of Evanston, Ill., was a valid exercise of the police power and did not violate any provision of the state or federal constitutions. In that case the authority to pass an inspection ordinance was expressly given to the city by the legislature and it referred only to the resident owner of a motor vehicle. We hold that §3, **Article XVIII of our Constitution,** and §§3562 and 3714 GC, enable Cincinnati to pass such an ordinance.

In the opinion of the court, Cincinnati was within its legal rights in view of the enormous and steadily increasing number of deaths and injuries from motor vehicle accidents, in enacting this ordinance requiring safe equipment as a part of a safety program in the use of our public streets.

The court is therefore of the opinion that the demurrer should be, and it is hereby sustained.