STATE, HENRY MÜHLENBRINCK, PROSECUTOR, v. LONG BRANCH COMMISSIONERS AND AUGUSTUS G. LANE.

1. Power in a municipal corporation to regulate and license a business or trade, confers no power to impose a tax upon such business or trade.

2. The rules and regulations which a corporation may make in respect to business or trade, under its police power, are such only as have relation to the public health, morals, and order of the community.

On *certiorari.*

Argued at February Term, 1880, before Justices DEPUE, SCUDDER and KNAPP.

For the prosecutor, *Henry G. Clayton.*

For the defendant, *F. K. Porter.*

The opinion of the court was delivered by

KNAPP, J.   The writ in this case brings up for review the conviction of the prosecutor, upon a complaint made by Augustus C. Viger, before Augustus G. Lane, a police justice. The offence charged against him was a violation of the twelfth section of a certain ordinance of the Long Branch commissioners, entitled "An ordinance concerning licenses." The section provides that "no person shall hawk or peddle any merchandise, fish, fruit, or provisions of any description, in the limits of the jurisdiction of this commission, or shall drive any peddler's wagon, cart, or any vehicle used in delivering goods, wares, or merchandise therein, without being licensed by the chairman of this board, as hereinbefore provided, under a penalty of ten dollars for each and every offence."

The first section authorizes the chairman of the commission to "grant, under his hand and seal, to so many and such persons as he shall think proper, licenses to carry on trade or business, or to drive, in the capacity of hucksters, hawkers, and peddlers, within said limits." The fifth section provides that "there shall be charged to each and every person who shall have been a resident within the limits of the jurisdiction of the commission for six months prior to making application for such license, and paid to the city clerk issuing the same, the following sums, to wit: for each and every hawker and peddler, with the privilege of using one peddler's wagon, the sum of three dollars, and for each additional wagon, the sum of three dollars; for each and every wagon or other vehicle employed or used by dealers or merchants, in the

delivery of goods, wares, and merchandise, the sum of two dollars; and that there shall be charged to each and every person who shall not have been a resident within the limits aforesaid, for six months prior to making such application, the following sums: for each and every hawker, huckster, and peddler using one peddler wagon, the sum of ten dollars, and for each additional wagon, the sum of ten dollars; for each and every wagon or other vehicle employed by dealers or merchants, in the delivery of goods, wares, or merchandise, the sum of ten dollars." The remaining portions of the ordinance are devoted to regulating the prices to be charged for hacks and other vehicles, and the conduct and deportment of the drivers. The reasons assigned for reversing the judgment of conviction are not based upon any alleged irregularities in procedure, but are directed against the validity of the ordinance under which the prosecution was had. They are, first, that it is not an ordinance for the regulation of the subjects of which it treats, but one for their taxation when no power is conferred upon the corporation to impose such tax; second, that, regarded as a police regulation, it is unequal and unjust, in that it makes unwarranted discriminations between citizens possessed of equal rights in the pursuit of the same legitimate business. The prosecutor was not a resident within the territorial jurisdiction of the Long Branch commissioners, and had refused to pay a license, as required by the said ordinance, and the conviction, in his case, was a proper one, if the ordinance is valid.

"The Long Branch Commissioners" was created a corporation, by act of the legislature, in 1867, and took certain special powers of control over this summer resort. Since then, its powers have been enlarged by various supplements, some ten or more in number. The latest supplement was passed in 1875. The power is claimed under it to establish the ordinance in question. The thirty-third and thirty-fourth sections of the last-mentioned act give power of regulation and control over a large number of specially-named subjects, and authorize provision by ordinance, by-laws, &c., for the general

welfare of the town. No express warrant is given by the charter to require a license to be taken out by persons pursuing the business of the prosecutor.

Conceding, as both sides in this case seem to do, that either under these acts or in virtue of the ordinary powers of local government belonging to such corporations, through which it may adopt rules and regulations proper for the good government of the municipality, the business of such persons may be regulated and controlled without express authority so to do, and conceding that requiring a license, as a condition to the pursuit of the business, is an appropriate method of regulating its prosecution, it is a right of regulation merely belonging to that branch of municipal government known as its police power. Authority under a charter, to pass by-laws and ordinances to license, control, regulate, or prohibit a business or traffic, within a municipality, gives no power to impose a tax for revenue purposes. The powers are essentially different and distinct. They may be unitedly exercised, if such appears to be the legislative will, but between them there is no necessary or legal connection. *Freeholders of Essex* v. *Barber*, 2 *Halst.* 64. In the recent case of *North Hudson Co. Railway* v. *Hoboken*, 12 *Vroom* 71, where this question received full consideration, and many authorities are collected, Mr. Justice Depue remarks upon the almost entire unanimity of the courts, in denial of the ability of municipal governments to use the power of licensing as a revenue measure, unless a legislative intent is manifested that such power may be used for that purpose.

Is, then, the ordinance in question, so far as it relates to the prosecutor and those persons of like employment, a matter of local police, or is it an exercise of the power of taxation for revenue? If the latter, it is void and inefficacious to maintain this conviction. That there is no legislative authority given to the corporation to impose a tax upon this or any other sort of trade, is clearly discoverable, upon an examination of its charter provisions; they contain no such grant of power. When the grant is not made for revenue, but for regulation

merely, a fee for license may be exacted, but it should not exceed the necessary or proper expense of issuing the license. The fee must necessarily be prescribed in advance, and must therefore be based upon estimation. The fact that the license fee is payable into the treasury of the municipality, provided the fee be a reasonable one, does not impress it with the character of a tax: *Johnson* v. *Philadelphia*, 6 *Penna. St.* 445.

It may not be easy, in every case, to determine with precision, from the *amount of the fee* charged, whether it is intended as a regulation or a tax, and all reasonable intendment should be in favor of its fairness and justness as a fee. A license fee of $3 for hucksters, hawkers, and peddlers, under the ordinance, is demanded of persons who have resided for six months within the municipality. Assuming this to be a reasonable fee for one so residing in the town, upon what principle can a charge of $10 against one who has not resided there for six months, or who resides outside of its limits, be demanded as a license fee? What circumstances incident to the one can subject the public officers to greater burden or trouble in considering and granting license, than those belonging to the other? Again, it may be asked why should the use of each additional wagon by him so licensed, call for an additional license fee? It could not be charged for the use of the public streets; that would be a road tax, imposed not in a manner authorized by law. If a license fee of $3 is adequate indemnity to the town for the costs of issuing the license, in the case of the six months' resident, I can conceive of no circumstance that makes it inadequate indemnity in the other case. In *Kipp* v. *City of Paterson*, 2 *Dutcher* 298, under authority in the charter of the city, to pass ordinances regulating its general police, an ordinance passed exacting a fee of five cents for each use of the public streets of Paterson, to sell hay, wood, or country produce, or other articles usually sold in open market, was held to be unreasonable as a regulation, and illegal, because it was a tax. In *State* v. *City of Hoboken*, 4 *Vroom* 280, it was held that, under a charter giving authority to the common council to regulate the building of vaults, an ordinance re-

quiring owners of lands to obtain permits for the erection of vaults in front of their premises, in the streets, and requiring payments therefor, graduated by the area of the vaults, was not a police regulation, but a tax upon the owners of the lands.

It is difficult to escape the conclusion, I think, drawn from the whole tenor of this part of the ordinance, that its purpose is to tax these occupations for the benefit of the treasury. It is irreconcilable with any other theory. By-laws or rules directing the manner of using the public streets by such persons, prohibiting the use of horns or bells in the public streets, or the public outcry of vendors, and restrictions of like character, are properly regulations. And when authority is given to require the possession of a license, as a condition for selling, a reasonable fee, to cover probable expenses, can be demanded. But the exaction of sums in excess of such expenses, and graduated by the amount of business done, can be nothing else than a tax upon such business. I think this ordinance, so far as it affects the prosecutor and those of his class, is void, as one having for its leading purpose taxation for revenue.

This conclusion leaves the prosecution and conviction against the defendant without foundation to stand upon. I am of opinion that the other objection is equally fatal to it, viz., "that it is unreasonable as a regulation, in its discriminations between citizens residing in, and those outside the limits of the corporation." Its direct tendency is to create monopoly.

The corporation is not endowed with power to pass ordinances in *restraint* of trade. *Kipp* v. *Paterson, supra; Dunham* v. *Rochester,* 5 *Cow.* 462.

The control it may exercise over business and trade, is such only as belongs to the necessities and demands of local government, such as have relation to the general prosperity of the citizen, the public health, order, and morals of the community. It cannot, outside of these considerations, enter into the arena of business competition, to advance a favored class and retard others. All citizens in pursuit of legitimate,

honest occupations, stand equal before the law, and a police power entrusted to a corporation is unreasonably exercised in making invidious distinctions between citizens endowed with equal rights. It is incompetent for this board of commissioners, entrusted, as it is, with the rule in local municipal affairs, to erect walls of exclusion against citizens without its limits, or obstruct free commerce and trade between them and its own inhabitants. No consideration has been given to the question whether, under the powers granted to this municipality, it derives any authority to require or grant licenses, in this business, or exact license fees. The question has not been discussed in the brief of counsel or embraced in the reasons filed, but it may be remarked that all its authority in this regard must rest in warrant from the state. I think the tenor of the cases is to the effect that power to license must come by direct grant, and cannot be taken by implication. *Cooley on Tax.* 408. So much of the ordinance as applies to the prosecutor is illegal and void, and the judgment against him must be reversed.