WILLIAM F. KELLAM ET AL., PROSECUTORS, v. THE
     MAYOR AND COMMON COUNCIL OF THE CITY OF
     NEWARK ET AL.

Submitted November 4, 1909—Decided February 21, 1910.

An ordinance of the city of Newark which provides that "No per-
     son or persons, without the written permission of the mayor,
     shall skin or bury any domestic animal which shall die within
     the city of Newark from accident or disease, or shall carry or
     transport any such dead domestic animal, except in carts or other
     vehicles, specially licensed for that purpose, under the penalty
     of twenty-five dollars for each and every offence"—*Held*, invalid,
     either as an exercise of the licensing power conferred by the city
     charter and subsequent general legislation, or as an exercise
     of the power to preserve the public health and control nuisances.

On *certiorari.*

The prosecutor Kellam was convicted in the First Crimi-
nal Court of Newark, and fined $25 for violation of the pro-
visions of section 425 of the ordinances of the city of New-
ark, which section reads as follows:

"No person or persons, without the written permission of
the mayor, shall skin or bury any domestic animal which
shall die within the city of Newark from accident or dis-
ease, or shall carry or transport any such dead domestic
animal, except in carts or other vehicles, specially licensed
for that purpose, under the penalty of twenty-five dollars for
each and every offence."

The facts as brought out by the depositions are that the
James N. Arbuckle Company owned and operated a plant
for the rendering of fat and grease, making tallows and
preparing and selling hides; that as part of that business
the said company bought the carcasses of dead animals, and
owned and operated a wagon specially constructed and well
adapted to transport dead horses; that the prosecutor Kel-
lam was the driver of such wagon which was used solely in
the business of the Arbuckle Company and for the purpose

of transporting to its plant such carcasses of dead horses and other animals as it should acquire in the course of its business, to be there converted into the company's manufactured products; that such wagon was air- and water-tight and especially contrived to effectuate such transportation without nuisance or annoyance of any kind. The case further shows that a horse owned by the Union Ice Company died of colic in that company's stable, and that the Arbuckle Company being notified by telephone, sent this wagon with Kellam, the prosecutor, as driver, within one or two hours after the horse's death; that the carcass was purchased by the company and paid for, put into the wagon, and taken to the Arbuckle rendering plant. It was admitted that no license was issued for the wagon as prescribed in the ordinance. The complaint did not specify that the written permission of the mayor had not been obtained, but no point was made of this either at the hearing in the criminal court or on the argument. A writ of *certiorari* was allowed in open court at the November term, 1909, the case to be submitted on briefs as of that term.

Before Justices SWAYZE, TRENCHARD and PARKER.

For the prosecutor, *Kinsley Twining.*

The opinion of the court was delivered by

PARKER, J. The respondents have not submitted any brief in support of the conviction brought up by this writ, and the case is necessarily disposed of on the brief for the prosecutor alone, and such independent examination as we have been able to give to the case.

A perusal of the section quoted above will show that it is broad enough to forbid under any and all circumstances (among other things) the transportation of any domestic animal that has died of disease or accident within the city limits; and this without regard to the question whether such transportation be by the owner of the animal or another, or whether the carcass is in a condition of entire innocuity.

Such a drastic interference with the ordinary rights of private property requires some good legal reason for its support. Its effect, if upheld in the present case, will be to subject a legitimate business which, as the testimony shows is, when properly conducted, in no way detrimental to the health or offensive to the senses of the public, to the supervision of the license department of Newark and perhaps compel the Arbuckle Company to discontinue transporting its own property in its own wagons and employ such outside hired wagons as that department sees fit to license. We can discover no color of authority for the enactment of so sweeping a prohibition either under the licensing powers of the city of Newark, or under the power given for preservation of public health or the suppression and prevention of nuisances; and are not cited to, nor do we perceive any other municipal power to which the ordinance in question may be referred.

As respects the licensing power the city charter provides (*Pamph. L.* 1857, *p.* 134, § 31, *pl.* 24), that the common council shall have power to make ordinances    *    *    *:

"To license and regulate cartmen, porters, hack, cab, omnibus, stage and truck owners and drivers, carriages and vehicles used for the transportation of passengers and merchandise, goods or articles of any kind (or to authorize the mayor to grant such licenses and to require the owners to mark the same in such manner as the common council shall designate) ; auctioneers, common cryers, hawkers, peddlers, pawnbrokers, junk shop keepers, sweeps and scavengers, and to fix the rates of compensation to be allowed to them, and to prohibit unlicensed persons from acting in such capacities."

Subsequently general licensing acts were passed which may, and probably do, have the effect of modifying this charter provision. The act of 1881 (*Pamph. L., p.* 299) was amended by act of 1882 (*Pamph. L., p.* 228), and again by *Pamph. L.* 1885, *p.* 317 (*Gen. Stat., p.* 2234), which provides as follows:

"(That it shall be lawful for the common council, board of aldermen, or other governing body of any city    *    *    *    in

this state, to make and establish ordinances for the following purposes: to license and regulate cartmen, porters, hacks, cars, omnibuses, milk wagons, stages and all other carriages and vehicles used for the transportation of passengers, baggage, merchandise and goods and chattels of any kind, and the owners and drivers of vehicles and means of transportation, * * * and also the place or places and premises in which or at which, the different kinds of business or occupation mentioned herein are or may be carried on or conducted; and to fix the rates of compensation to be paid therefor, and to prohibit all persons and places, and all vehicles unlicensed, from acting, using or being used in said capacities, and for such uses and purposes, and to fix and prescribe penalties for the violation of any such ordinance or ordinances, and that the fees for such licenses may be imposed for revenue; *provided,* that no person or persons shall be required to take out a license for the selling of any product of his farm situated in this state.)"

Substantially similar provisions, so far as relates to the present case, are contained in *Pamph. L.* 1889, *p.* 41 (*Gen. Stat., p.* 718); *Pamph. L.* 1894, *p.* 393 (*Gen. Stat., p.* 2236), and *Pamph. L.* 1905, *p.* 360, which probably supersedes all previous legislation on the subject. *Lakewood* v. *Havens,* 47 *Vroom* 169. The noticeable feature about all these acts is their evident intention with respect to means of transportation to subject to the licensing power only those of a public or semi-public character. Each of the acts contains a provision for prohibition of unlicensed persons, and (with the exception of the charter provisions) of unlicensed vehicles from acting or being used in such capacities. Again, the acts confer the power of fixing the compensation to be allowed to the owners of vehicles. Reading the various acts as a whole it is clear that the general words "carriages and vehicles used for transportation," &c., are restricted to those of hackmen, public cartmen, and the like. *Joyce* v. *East St. Louis,* 77 *Ill.* 156; *State* v. *Robinson,* 42 *Minn.* 107; *St. Louis* v. *Grone,* 46 *Mo.* 374. To permit city authorities to exact a license fee and exercise supervisory jurisdiction over the

transportation by private persons of their own property in their own wagons, would be so unreasonable that no such construction should be given to a statute unless the intent is perfectly clear; and if it were, we should seriously doubt its validity.

Nor can the ordinance be supported on the theory of controlling nuisances; for carcasses of dead animals are not *per se* nuisances, but only liable to become such (29 *Cyc.* 1169); and while the municipality in the exercise of its police power may provide against such a result, it may not do so to the extent of unduly interfering with the property rights of the owners of such carcasses; and that such property rights exist is unquestionable (*Underwood* v. *Green*, 42 *N. Y.* 140; *Schoen* v. *Atlanta*, 97 *Ga.* 697; 33 *L. R. A.* 804); so it has been held that the municipality cannot prohibit the owner of a dead animal from removing it, and compel him to pay a public contractor to do so. *Knauer* v. *Louisville*, 20 *Ky. L. Rep.* 193; 41 *L. R. A.* 219; *Richmond* v. *Caruthers*, 103 *Va.* 774; 70 *L. R. A.* 1005. That such municipality may lawfully make reasonable general regulations under its charter, prescribing a time within which dead animals must be removed or disposed of and the manner of such disposition, having due regard to the owner's rights, we have no doubt. 38 *L. R. A.* 330, *note.* But we are satisfied that the requirement of a license or special permission for the removal of a dead animal that is in no immediate danger of becoming a nuisance by its owner, is not a reasonable regulation of this character.

Inasmuch, therefore, as we think the ordinance in question is not justified as an exercise either of the licensing power or of the power to safeguard the public health or of any other power conferred on the municipality, it is without legal force, the conviction was without warrant of law, and must be set aside.