THE MAYOR AND ALDERMEN OF JERSEY CITY, RESPOND-
ENT, v. MAX CHASAN, PROSECUTOR.

---

THE MAYOR AND ALDERMEN OF JERSEY CITY, RESPOND-
ENT, v. JOSEPH MANHEIM, PROSECUTOR.

Submitted March 23, 1911—Decided June 6, 1911.

1. An ordinance adopted by the board of aldermen of Jersey City forbidding all persons to drive on any public street any horse attached to a business vehicle of any kind without a license, is not supported by any power delegated by the legislature to the city.

.2. Where such ordinance discriminates between citizens, providing for a license to those who have resided in the city for more than three months, and requiring those who have resided there less than three months to obtain a permit before they can drive a horse attached to any business vehicle of any kind on the streets of the city, such discrimination, based upon length of residence, is unreasonable.

On *certiorari.*

Before Justices SWAYZE, BERGEN and MINTURN.

For the prosecutors, *McDermott & Enright.*

For the respondent, *John Milton.*

The opinion of the court was delivered by

BERGEN, J.   These cases were argued together and are alike except that Chasan was delivering goods in Jersey City as the agent of the United States Express Company, which had been transported from points outside of the State of New Jersey to Jersey City, and Manheim was carrying goods for the express company from consignors in Jersey City addressed to consignees without the state.   Both defendants were convicted under an ordinance of Jersey City, section 1 of which provides that no person shall be permitted to drive a horse attached to a business vehicle of any kind without first obtaining a license.   Section 2 provides that no person shall drive any such vehicle *without a permit* unless he shall have been a resident of Jersey City for three months or is under eighteen years of age.   Section 3 fixes the license fee at one dollar for the first year and fifty cents for each renewal.   Section 4 prescribes the penalty for violation to be $5 for each offence.

The first point urged by the prosecutor is that the ordinance is not justified by the power delegated to Jersey City under its charter or other law applicable.   The power contained in the charter is to license and regulate hawkers, peddlers, hucksters, butchers, slaughter-houses, markets, auc-

tioneers, cartmen, hack drivers, omnibus drivers and porters. By another provision, power is given to regulate the use of streets by passengers, vehicles, railways and engines. The argument of the prosecutor is that the power to license the persons above named is not sufficient to prohibit the driving of any business vehicle without a license. The extent to which this ordinance goes would prevent any merchant from delivering goods sold by him to his customers without a license, and makes no distinction between the use of a public highway by a person deriving a revenue from such use and one whose use of the public highway is in a degree private, and as was said by Mr. Justice Parker in *Kellam* v. *Newark*, 50 *Vroom* 364: "To permit city authorities to exact a license fee and exercise supervisory jurisdiction over the transportation by private persons of their own property in their own wagons, would be so unreasonable that no such construction should be given to the statute, unless the intent is perfectly clear." This, I think, states a correct rule and the authority given to Jersey City to exact license fees should be limited to the powers conferred by the legislature, which I do not think authorizes the imposition of a license upon all persons driving "on any public street of a business vehicle of any kind." It is certainly unreasonable, and the intent to confer such a power is not clearly manifested by the charter. What I have just said applies equally to the second point made by the prosecutor that the ordinance is not a valid exercise of the power to regulate. I also think the ordinance is void because of its discrimination between residents and non-residents. Residents may obtain a license by paying one dollar; non-residents, or persons who have not resided in the city three months, must obtain a permit. Exactly what a permit is as distinguished from a license it is difficult to understand. That a distinction is intended seems to be clear, and I think that as to residents of three months or over a license may be obtained upon payment of a license fee, but of non-residents, or those on probation for three months, something else is required, and that is a permit, which apparently may be granted or refused arbitrarily by the city. This is an unrea-

sonable regulation, as it discriminates between citizens who have resided in the city more than three months and those who have not. Why length of residence should be made the ground of discrimination in the matter of driving horses attached to vehicles on a public highway, the respondent does not attempt to explain. "Its direct tendency is to create monopoly." *Muhlenbrinck* v. *Long Branch Commissioners,* 13 *Vroom* 364.

The conviction and the proceedings on which they are based are set aside in both cases, with costs.