### MAYOR AND ALDERMEN OF JERSEY CITY v. HENRY FOSTER.

Submitted March 23, 1911—Decided June 13, 1911.

The ordinance of Jersey City entitled "An ordinance concerning animals dying from accident or disease" is a legal exercise of the police power in that city, and the conviction under its provisions of the prosecutor who failed to take out a permit for the removal of a dead animal through the streets, is affirmed.

On *certiorari.*

Before Justices SWAYZE, BERGEN and MINTURN.

For the prosecutor, *Davis & Hastings.*

For the defendant, *John Milton.*

The opinion of the court was delivered by

MINTURN, J. The writ of *certiorari* in this case brings up for review the proceedings for conviction of prosecutor for violating an ordinance of the city of Jersey City, which forbids any person, except the contractor appointed for that purpose by the board of aldermen of the city, to carry or transport any dead animal from the place where it shall die to any other place within the limits of the city, or without the city, without the permission in writing of the majority of the committee on nuisances or of the street commissioner. There is no dispute about the fact that the defendant, as the employe of Schwarz Brothers Company, was violating the ordinance, and the testimony warrants the conclusion that during the removal blood and offensive matter was running from the wagon and dropping upon the streets. The dead animal was a horse which had been killed by the authorities because it was afflicted with glanders, and the finding that it was a nuisance is clearly supported by the testimony.

It is argued that the mayor and aldermen had no authority to adopt the ordinance, and this insistment is based upon the claim that the charter does not authorize the requirement of a license to transport dead animals through the streets of Jersey City. A considerable portion of the brief is devoted to this question, but it is quite manifest that the ordinance is based upon the authority conferred by legislation to regulate and control nuisances. The prosecutor argues that the dead horse in question was not a nuisance, as it had recently died and that it was not offensive to public health.

We think the evidence fully justifies the finding that the dead animal in this case was a nuisance and offensive and likely to be dangerous to public health.

The contention that this ordinance is in effect an effort to license the doing of a noxious thing and that such licensing power was not conferred, we think without merit, since the ordinance does not provide for the granting of a license, but simply forbids the doing of an act dangerous or noxious to the public health, without the permission of certain officers of the city; and also provides that the owner shall give notice at the

police house, within two hours after the death shall have taken place, and enables the board of aldermen to contract with the proper person to remove such animals.

We perceive nothing of substance, therefore, in the argument with reference to the power to license, as the whole scheme seems to be an effort to afford a summary method of disposing of a nuisance.

It is argued also that the ordinance is invalid because it delegates the licensing power to a committee or subordinate officer, and in effect empowers no one to grant such license or permission. But we find no delegation of power to license contained in this ordinance. It simply allows the owner to remove his property upon obtaining the permission of a designated committee or officer. It is conceded that there is no committee on nuisances, nor any street committee, and that such a committee has not existed since August, 1910, the street commissioner since that date having been superseded by the board of street and water commissioners, and that the power sought to be exercised here is now vested in that board. We think it clear that such is the fact, and that the street and water board are now vested with the power in question, and are authorized by law to grant the permit required in the case at bar.

It is also argued that, although the ordinance may be valid for some purposes, it did not apply to the act for which this defendant was convicted, and it is insisted also that the enforcement of the ordinance is unreasonable, in that it interferes with the prosecutor in the prosecution by him in his own conveyance of his lawful business. The argument is based upon the assumption that the removal of dead animals under any and all circumstances through the streets of a city is a lawful business which is beyond the pale of municipal regulation. But the rule is as fundamental as the maxim *sic utere tuo ut alienum non laedas,* that when a private business is transacted in such a manner as to become noxious to public health, morals or convenience, it occupies in law the *status* of a public nuisance, and where the power is conceded to the municipality, may be regulated or abated as public necessity

or convenience may require. *Cooley Const. Lim.* 746; *Baltimore and Potomac Railroad Co.* v. *Fifth Baptist Church,* 108 *U. S.* 317; 1 *Abb. Mun. Corp.* 240.

That the transportation through the streets of a city of a dead carcass emitting blood and offensive matter upon the pavement, is a proper subject-matter for municipal regulation by a board constituted by law with the powers to regulate the business by the issuing of a permit, would seem to be indubitable.

We think the ordinance in question affords a lawful exercise of the police power delegated to the municipality, and that the conviction under review should be affirmed.