## SCHWARZ BROS. COMPANY AND EUGENE J. SCHWARZ, PROSECUTORS, v. BOARD OF HEALTH OF JERSEY CITY.

Argued February 23, 1912—Decided July 8, 1912.

An ordinance passed by the board of health of Jersey City provides in effect that (section 1) it shall be the duty of every owner of any animal which shall die from accident or disease, or be killed for any purpose other than consumption for food, within the limits of Jersey City, to give notice of such death to the office of the board of health within a certain specified time after death; (section 2) it shall be unlawful for any person or persons, except the health officer or the board or the contractor for the removal of dead animals, to transport any such animal, from the place where it died, to any place within or without the limits of Jersey City, without having first obtained permission in writing from the board or health officer, and that no permit shall be granted unless there be a written application signed by the owner; (section 3) if, in the judgment of the health officer or the board, such dead animal is a nuisance or offensive and likely to be dangerous to public health, or if the owner shall fail to apply for a permit or to remove the animal within the time mentioned in the permit, or within such time as in the judgment of such health officer or board may be necessary to

prevent it from becoming a nuisance or offensive and likely to be dangerous to public health, then it shall be lawful for such officer or board to cause its removal by the contractor, &c.  *Held*—
(1) That the ordinance is not unreasonable.
(2) That it is not discriminatory and that it does not deny to citizens the equal protection of the laws in violation of the state or federal constitution.
(3) That it is within the power of the board of health.
(4) That, in absence of proof of fraud, the motives of the board of health in passing it will not be inquired into.

On *certiorari*.

Before Justices TRENCHARD, PARKER and MINTURN.

For the prosecutors, *Davis & Hastings, George L. Record* and *Merritt Lane.*

For the defendant, *James J. Murphy* and *Thomas G. Haight.*

The opinion of the court was delivered by

TRENCHARD, J.  This writ brings up for review an ordinance passed by the board of health of Jersey City on November 21st, 1911, entitled "An ordinance to regulate the removal and transportation in and through Jersey City of animals dying from accident or disease or killed for any purpose other than consumption for food."

The ordinance provides in effect that—(section 1) it shall be the duty of every owner of any animal which shall die from accident or disease, or be killed for any purpose other than consumption for food, within the limits of Jersey City, to give notice of such death at the office of the board of health, within a certain specified time after death; (section 2) it shall be unlawful for any person or persons, except the health officer or the board or the contractor for the removal of dead animals, to transport any such animal, from the place where it died, to any place within or without the limits of Jersey City, without having first obtained permission in writing from the board or health officer, and that no permit

shall be granted unless there be a written application signed by the owner; (section 3) if, in the judgment of the health officer or the board, such dead animal is a nuisance or offensive and likely to be dangerous to public health, or if the owner shall fail to apply for a permit or to remove the animal within the time mentioned in the permit, or within such time as in the judgment of such health officer or board may be necessary to prevent it from becoming a nuisance or offensive and likely to be dangerous to public health, then it shall be lawful for such officer or board to cause its removal by the contractor, &c.

We now proceed to consider in convenient order the only reasons assigned and argued why the ordinance should be set aside.

We are of opinion that there is no merit in the objection that the ordinance is unreasonable.

Where an ordinance is within the power of the board which passed it, the presumption is that it is reasonable, and the judicial power to declare it void can be exercised only when, from the inherent character of the ordinance or from evidence showing its operation, it is demonstrated to be unreasonable, and the burden is on the person asserting the unreasonableness, where it is not inherently unreasonable. *Traction Co.* v. *Elizabeth,* 29 *Vroom* 619; *Trenton Horse Railroad Co.* v. *Trenton,* 24 *Id.* 132; *Wysc* v. *Jersey City.* 39 *Id.* 127.

The ordinance in question was passed under the authority granted to boards of health to pass ordinances relating to public health, of which we shall hereinafter speak.

It surely is not unreasonable in providing for the notice of the death of such animals. This seems reasonable in order that there may be an investigation and suitable precautions taken to prevent infection or epidemic if need be. Nor is it unreasonable in providing for the removal of a dead animal if the owner fails to apply for a permit or to remove it within such time as, in the judgment of the health officer or the board, may be necessary to prevent it becoming a nuisance.

An opportunity is given the owner to remove it, if he sees fit, and none of his legitimate property rights are invaded.

So, too, it is not unreasonable to prohibit the transportation of such a dead animal through the streets without a permit from the board or health officer, to be obtained on the written application of . the owner. This merely places it within the power of the board, through the medium of a permit, to provide in each specific case, as a condition for the transportation through the streets, such regulations as, in the judgment of the board, are necessary and proper to preserve and protect the public health.

The prosecutors are engaged in the business of buying and transporting to their "rendering factory" dead animals. They contend that the ordinance is unreasonable in that it hampers them in their business. Granting that it hampers them, we do not see that it does so unreasonably. It contemplates prompt inspection and grant of proper permit, for which no fee is charged. It applies alike to all citizens. The fact that the prosecutors happen to be engaged in the business of buying and transporting in their own wagons such dead animals, is no reason why they should not be subjected to such regulations as will render it reasonably certain that the proper municipal authorities shall receive notice of the death of such animals, and be thus afforded an opportunity for inspection and the imposition of such regulations as may be reasonably necessary for the preservation of the public health, one of the fundamental and foremost duties of a municipality.

The prosecutors refer us to *Kellam* v. *Newark,* 50 *Vroom* 364, and contend that the ordinance in question comes within the prohibition of that case. We think not. The ordinance there under review is quite different from the present one. There the ordinance prevented the transportation of a dead animal, except in carts *licensed* for that purpose. The word "permission" in that ordinance related only to the skinning or burying of a dead animal. To prohibit the removal of an animal except in a licensed wagon is a very different thing from prohibiting the removal or transportation of an animal

without a permit. This distinction is recognized in this court in *Jersey City* v. *Foster,* 52 *Id.* 360, where it was held that an ordinance in all material respects very similar to the one in question, was not an effort to license the doing of a noxious thing, "since the ordinance does not provide for the granting of a license, but simply forbids the doing of an act dangerous or noxious to the public health, without permission of certain officers of the city." And speaking on this point, the court said: "We perceive nothing of substance, therefore, in the argument with reference to the power to license, as the whole scheme seems to be an effort to afford a summary method of disposing of a nuisance."

The ordinance in the Kellam case was a broad attempt to require a license for carts when there was no power to do so. But the court in that case said that, while a dead animal was not *per se* a nuisance, it was likely to become such, "and while the municipality in the exercise of its police power may provide against such a result, it may not do so to the extent of unduly interfering with the property rights of the owners of such carcasses." And again: "That such municipality may lawfully make reasonable general regulations under its charter, prescribing a time within which dead animals must be removed or disposed of and the manner of such disposition, having due regard to the owner's rights, we have no doubt."

It will be seen, therefore, that the ordinance in question does not violate the rule laid down in the Kellam case. The ordinance recognizes the property rights of the owners of the carcasses, and it seeks merely to provide against such a carcass becoming a nuisance or dangerous to public health. Through the instrumentality of a permit, it seeks to prescribe the regulations as to the time within which the dead animals must be removed and disposed of and the manner of such disposition, recognizing the owner's rights at all times in the carcasses, until such a time as they become or are likely to become a nuisance and until the owner has neglected to take means to dispose of them.

The ordinance cannot be declared unreasonable because it may interfere or place additional burdens on the prosecutors in carrying on their business, because all businesses and vocations must submit to such reasonable regulations as are necessary for the welfare of society at large.

This same point was raised in the Foster case and decided adversely to the prosecutors' present contention. The court said: "It is insisted also that the enforcement of the ordinance is unreasonable in that it interferes with the prosecutor in the prosecution by him in his own conveyance of his lawful business. The argument is based upon the assumption that the removal of dead animals, under any and all circumstances, through the streets of a city, is a lawful business which is beyond the pale of municipal regulation. But the rule is as fundamental as the maxim *'Sic utere tuo ut alienum non laedas,'* that when a private business is transacted in such a manner as to become noxious to public health, morals or convenience, it occupies in law the *status* of a public nuisance, and where the power is conceded to the municipality may be regulated or abated as public necessity or convenience may require."

We are also of opinion that the ordinance is not discriminatory, and that it does not deny to the prosecutors the equal protection of the laws in violation of the state or federal constitution.

The contention is that it is discriminatory because it does not provide that the official contractor shall be required to procure a permit. But the second section, in exempting the official contractor from the duty to procure a permit, applies to him only in his official capacity, that is to say, in removing animals from the streets and public places, and such animals as he may be directed by the board of health to remove pursuant to the third section.

We are also of opinion that the ordinance is within the power of the board of health.

The board was created pursuant to and derives its powers not from the city charter, but from the Board of Health act

of 1904. *Pamph. L., p.* 343. *Board of Health* v. *New York, &c., Railroad Co.,* 48 *Vroom* 15.

By section 4 of that act boards of health in cities of the first class are empowered: "To pass, enact, alter, amend and repeal ordinances relating to the public health of such cities, and to fix the amount of fines and penalties for the violation of said ordinances, and to provide for the collection, appropriation and disbursement of the same."

That is a sufficient grant of power to enact the ordinance in question. It is much broader than the power held to be a sufficient warrant for the very similar ordinance under review in *Jersey City* v. *Foster,* 52 *Vroom* 360.

It is contended that the operation of the proviso in section 2 of *Pamph. L.* 1895 (*Pamph. L., p.* 492) deprives the board of health of Jersey City of the power to pass the ordinance in question. But that is not so for two reasons—*first,* the board, as we have seen, was created under and derives its powers from the act of 1904, which contains no such limitation, and the proviso mentioned, therefore, would seem to have no application; and *secondly,* if we assume that it has, the record in this case discloses that the county board and the city board at a joint meeting by ordinance conferred upon the city board jurisdiction to pass the ordinance in question, as was contemplated by such proviso.

The contention that "the ordinance was passed for the sole purpose of protecting the contractor for the removal of dead animals from the streets of Jersey City," and hence should be set aside, cannot prevail.

It is well settled that the judicial branch of the government cannot institute an inquiry into the motives of the legislative department in enacting laws. In analogy to this rule it is doubtless true that the courts will not, in general, inquire into the motives of municipal boards in passing ordinances. *Dill. Mun. Corp.* (*5th ed.*), § 580. Assuming, however, without deciding, that their acts may be impeached for fraud actually consummated at the instance of the municipality defrauded or at the instance of persons injured

thereby, it is sufficient to say that the proof in this case fails to disclose that any fraud was perpetrated in the present case.'

Since no infirmity has been shown in the ordinance brought up by this *certiorari*, the writ will be dismissed, with costs.