114 N.J. Super. 115 (1971)
274 A.2d 860
BOROUGH OF NEPTUNE CITY, ET AL., PLAINTIFFS,
v.
BOROUGH OF AVON-BY-THE-SEA, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided March 8, 1971.
*117 Mr. Robert V. Carton for plaintiff (Messrs Carton, Nary, Witt & Arvanitis, attorneys).
Mr. Thomas J. Spinello for defendant.
SIMMILL, J.S.C.
Defendant Borough of Avon-by-the-Sea (Avon) is a municipality bordering on the Atlantic Ocean. It owns the beach, boardwalk and other facilities east of Ocean Avenue, the street which comprises an ocean-view drive and which runs through Avon's entire length, a distance of some seven blocks. Avon extends westerly to approximately the right of way of the New York and Long Branch Railroad Co., some seven blocks from Ocean Avenue.
Neptune City abuts Avon on the west. It has no ocean-front.
Judicial notice is taken that for many years the beaches on the North Jersey shore were open beaches, but with the advent of automobile traffic and the ever-increasing number of vacationers, the beaches and bathing facilities became overcrowded and the beachfront municipalities began to take steps to limit the congestion by regulating the use of the beach facilities and by charging fees. In Kirsch Holding Co. v. Manasquan, 24 N.J. Super. 91 (App. Div. 1952), the charging of fees was held invalid absent legislation authorizing same, and this led to the adoption of N.J.S.A. 40:61-22.20, which provides as follows:
The governing body of any municipality bordering on the Atlantic ocean, tidal water bays or rivers which owns or shall acquire, by any deed of dedication or otherwise, lands bordering on the ocean, tidal water bays or rivers, or easement rights therein, for a place of resort for public health and recreation and for other public purposes shall have the exclusive control, government and care thereof and of any boardwalk, bathing and recreational facilities, safeguards and equipment, now or hereafter constructed or provided thereon, and may, by ordinance, make and enforce rules and regulations for the government and policing of such lands, boardwalk, bathing facilities, safeguards and equipment; provided, that such power of control, government, care and policing shall not be construed in any manner to exclude or interfere with the operation of any State law or authority with respect *118 to such lands, property and facilities. Any such municipality may, in order to provide funds to improve, maintain and police the same and to protect the same from erosion, encroachment and damage by sea or otherwise, and to provide facilities and safeguards for public bathing and recreation, including the employment of lifeguards, by ordinance, make and enforce rules and regulations for the government, use, maintenance and policing thereof and provide for the charging and collecting of reasonable fees for the registration of persons using said lands and bathing facilities, for access to the beach and bathing and recreational grounds so provided and for the use of the bathing and recreational facilities, but no such fees shall be charged or collected from children under the age of 12 years.
Pursuant to the powers granted by this statute Avon adopted an ordinance which provided, among other things, for the registration and issuance of badges to those who desired to avail themselves of the beachfront and water. The fee therefor, insofar as it affects this case, was set at $10 for the season; the fee for monthly badges was set at $7. On February 24, 1970 the ordinance was amended, and this set the fee for monthly badges at $10. The nub of the present controversy is that part of the section in the amending ordinance which reads as follows:
Season badges shall be sold to and only for the use of persons who are residents or taxpayers of the Borough of Avon and the members of their immediate family who are members of and reside in the same household unit.
For the purpose of this ordinance a resident shall include any person living within the territorial boundaries of Avon for not less than 60 consecutive days in the calendar year in which a badge is requested. A taxpayer is a person who owns real estate in the Borough of Avon, legal title to which is recorded in said person's name.
The effect of this ordinance is that residents and taxpayers of Avon may purchase a season badge for $10. All others must purchase monthly badges at $10 a month or $20 for the season. The present complaint attacks the validity of the amendment on the ground that it discriminates against the residents of Neptune City in regard to access and use of the bathing beaches of Avon. Individual persons residing in *119 Neptune City joined as parties plaintiff, perhaps out of an abundance of caution.
Plaintiffs contend that the decisions found in the case law of New Jersey prohibit a municipality from discriminating on the basis of residence; that such discrimination is prohibited by the Equal Protection Clause of the 14th Amendment, and that plaintiffs' access to navigable waters is being hindered, contrary to the common law. Defendant argues that both case law and the United States Constitution allow discrimination on the basis of residence where there is a reasonable basis for doing so, and it contends that the special burdens which Avon bears because of its proximity to a beach, the lure of which transcends municipal boundaries, justifies a different and higher rate of admission for nonresidents.
As authority for their position plaintiffs cite Thompson v. Ocean Grove, 55 N.J.L. 507 (Sup. Ct. 1893); Morgan v. Orange, 50 N.J.L. 389 (Sup. Ct. 1888), and Jersey City v. Chasan, 81 N.J.L. 315 (Sup. Ct. 1911). In Thompson and Morgan the court struck down ordinances which imposed a higher license fee on nonresident peddlers than on residents. Similarly, in the Jersey City case the court held that requiring a three-month residency period prior to granting a driver's license to operate a horse-drawn vehicle was unlawful. The rationale in all three of these cases was derived from Muhlenbrinck v. Long Branch Commissioners, 42 N.J.L. 364, 369 (Sup. Ct. 1830), where the court held that imposing such a hindrance on nonresidents for the benefit of residents is a restraint of trade, tending toward monopoly, and hence illegal.
In Nutley v. Brandt, 12 N.J. Misc. 670 (Sup. Ct. 1934), the court invalidated an ordinance which required a nonresident to obtain a permit to distribute circulars because, among other things, the ordinance assumed that all nonresidents were evildoers and this assumption was unreasonable. Hence, none of these cases is dispositive of the question posed here.
*120 In Brindley v. Lavallette, 33 N.J. Super. 344 (Law Div. 1954), the court struck down an ordinance prohibiting nonresident use of the beach saying:
* * * [D]iscrimination against non-residents in an ordinance invalidates it, excepting possible special circumstances which would justify the discrimination. [at 349]
From these cases the rule of law appears to be that an ordinance cannot unreasonably discriminate against nonresidents, and if it does so it is void. Conversely, if there is a reasonable basis for differentiating between residents and nonresidents, the ordinance is valid.
Such a rule disposes of the plaintiffs' "equal protection" argument. It is settled law in New Jersey that if there is a reasonable basis for the recognition of separate classes, and the disparate treatment of these classes has a rational relation to the object sought to be achieved by the lawmakers the Constitution is not offended. N.J. Chap. etc. v. State Bd. of Planners etc. 48 N.J. 581, 601 (1967). Hence, if the proofs demonstrate that there exists differences between the residents of Avon and the residents of Neptune City which reasonably call for a discriminatory fee structure, the residents of Neptune City cannot complain that a constitutional infirmity exists.
Plaintiffs' contention that their common law right of access to navigable waters precludes interference by Avon is without merit. Assuming that such a right exists, there is no doubt but that it can be circumscribed by the Legislature. "The Legislature has the power, absolute and unlimited, to regulate, abridge or vacate public rights in tidal waters. * * *" Schultz v. Wilson, 44 N.J. Super. 591, 597 (App. Div. 1957).
By enacting N.J.S.A. 40:61-22 the Legislature has exercised its power. The real issue is not whether fees can be enacted but whether these fees must be applied equally to all persons.
*121 At the trial plaintiffs' expert testified that because of the direction of the "littoral flow" (underwater movement of sand caused by the action of the ocean), endemic to this section of the Atlantic, and absent interference by man, the beach at Avon would eventually be destroyed by erosion. This condition can be ameliorated only by the construction of groins and jetties which interrupt the natural degenerative process by retarding the littoral flow, thus trapping the sand on the beach. Since 1929 the State of New Jersey has expended $377,386 to construct devices for the two-fold purpose of containing the erosion and maintaining sand-free access to the navigation channel of the Shark River bordering Avon on the south. For this latter reason the State in 1969, with the assistance of the Corps of Engineers, transported 252,000 cubic yards of sand from Belmar beach (on the opposite bank of the Shark River) to Avon, thus widening and protecting the beach while eliminating a potential source of obstruction in the navigation channel. Had it not done so one of the major outlets to the ocean, Shark River, might well have become unfit for ingress from and egress to the sea, thereby working a hardship on the sportfishing industry which uses the inlet for this purpose. The Belmar side of the inlet is built up to the end of the jetty, some 500 feet seaward of the jetty on the Avon side. So, while Avon gained sand on its beach, it did so by its fortuitous location; the principal objective was the maintenance of the channel of the inlet. Avon did not request this windfall and should not be chargeable with it. Avon is also the gratuitous recipient of sand obtained when the channel is periodically dredged by the State. This benefit will continue to accrue to Avon and will serve to impede the inevitable erosion.
Mindful of the need for groins and jetties, Avon has also since 1929 expended approximately $144,167,[1] to construct *122 them. In 1963 the jetties were improved at a cost of $95,656, which was borne 50% by the State, 10% by Monmouth County and 45% by Avon.[2] Despite these facts there can be little doubt that without the State's assistance the beach at Avon, and possibly Avon itself, would long ago have perished under the onslaught of tides and waves. Plaintiffs argue that since the State is in large measure responsible for the beach's existence, the citizens of the State are entitled to access to that beach on the same footing as the citizens of Avon.
In contrast, however, Avon introduced evidence which showed that $190,184 expended in 1969 from the municipal budget was allocable to the operation of the beachfront. When revenues derived from the beach were compared to expenses a net loss of approximately $50,000 was realized and absorbed by the resident taxpayers. During the season which runs from June to September, resident population increased from 1850 to 5550. A total of 32,741 admission badges were sold to residents and nonresidents. As a result of this influx of people an extra policeman and police car, otherwise unnecessary, are required.
Municipal court is conducted twice instead of once a week. Additional space, employees and lifeguards must be provided to cope with the flood of cars and people. Traffic is congested, and parking spaces near the beach are almost nonexistent, necessitating more police.
Maintenance and reconstruction of the boardwalk, indispensable to proper operation of the beach, is the sole responsibility of the borough. Because of the risk inherent in this wooden structure, insurance carriers require that an extra fire engine pumper be kept on hand at all times.
Plaintiffs objected to much of this evidence, especially that portion in which municipal officials were forced to make allocations of amounts aggregated in line items to the beachfront operations. The court, however, found that these officials *123 had the knowledge and expertise to arrive at estimates which competently reflect expenses attributable to the beach, and most of them would not be incurred but for the beach. The bulkhead which protects the road and the sidewalk has deteriorated. The boardwalk is partially depreciated. When these need to be replaced it will be at the expense of Avon.
From the foregoing it is evident that Avon bears an economic burden directly related to the attraction of its beach. This burden is unique and is visited upon its taxpayers primarily by nonresidents, who enjoy Avon's recreational facilities at a price bearing little relationship to the cost of providing them. The court recognizes that the State is in large measure responsible for the beach's existence, but it also recognizes that any beachfront is an asset to the entire State, and in the absence thereof the economy of the entire State would suffer. However, the State's undertaking compounds Avon's plight because it not only makes the beach more alluring but it also invites more intensive use, thus increasing the services Avon is required to provide. While Avon is thus adversely affected, the citizenry as a whole reaps a benefit because a great natural resource is preserved. In addition, the beach, in conjunction with all the beaches along the shore, is a thriving tourist industry which provides financial rewards enjoyed by thousands of citizens far removed from the seacoast municipalities.
Avon, because of its fortuitous location, is charged with the responsibility of administering this natural resource for all our citizens. However, the court is of the opinion that Avon should not alone bear the disproportionate cost of the administration. After considering the equities on both sides the court finds that cogent and compelling justification exists for the establishment of a differential fee schedule based on residence. As long as the disparity is reasonable and bears a rational relationship to the expenses of operation the law is not offended.
For these reasons judgment will be entered for the defendant.
NOTES
[1] This figure is derived from P-3. It represents the difference between total cost and the State's contribution.
[2] This totals 10%  obviously an error in the proofs.